Kansas Quality Construction, Inc., a Corporation, Plaintiff-Appellee, and Cross Appellant, v. Marshall Chiasson, Robert O. Emrick, William A. Beerup, Individually and as Co-partners, Defendants-Appellants and Cross Appellees.

Gen. No. 11,040.

Fourth District.

September 3, 1969.

Rehearing denied October 3, 1969.

Hutchens & Mann, of Winchester (Richard E. Mann, of counsel), for appellants.

Bellatti, Fay & Bellatti, of Jacksonville (John E. Bellatti and Walter R. Bellatti, of counsel), for appellee.

SMITH, J.

Plaintiff, a Kansas corporation, is engaged in the business of building apartments. It purports to have the know-how to get things done. This necessarily includes preliminary assistance and advice just to get things off the ground—literally. Defendants conceived the idea of an apartment and had just the spot. Presumably lacking this know-how, they and plaintiff got together and the following emerged:

" . . .

"1. . . .
"2. Owner (defendants) agrees to retain the services of builder (plaintiff) for the above project, said services to be as follows:
"a. Development of plat layout, to show building placement, total buildings, recreation area, parking, etc.

"b. On approval of area plat by both owner and city, builder will cause plans of proposed buildings to be drawn, for loan submission.

"c. Assist owner in obtaining adequate financing for completion of project, through first and secondary financing.

"d. Erect apartment buildings on owner's ground in accordance with approved plans and specifications.

"3. Owner agrees to contract with builder to erect all buildings built at the above location, on a turn key basis, as services outlined in paragraphs 2a, b, c and d are performed.

"4. . . .

"5. Cost of the project shall be quoted as a 'not to exceed figure,' but in an amount not more than the proceeds from available financing, first and secondary financing. . . .

". . . In the event owner contracts with a builder other than this company for buildings at the above location it is expressly understood by and between the parties to this agreement that builder shall be due a fee in the amount of $4,000.00, due and payable at that time."

To us this agreement means that when plaintiff has performed 2a, b and c, defendants can then opt to: (1) have plaintiff "erect all buildings built," or (2) contract "with a builder other than [plaintiff]" and pay plaintiff a "fee" of $4,000, or (3) build it themselves, or (4) not build at all. Plaintiff did perform 2a, b and c. Defendants opted for (2), another builder, plaintiff says, but failed to pay it the "fee." It sued and a verdict for $4,000 followed. Plaintiff moved for inclusion of interest in the judgment from the "time" that defendants so opted

281

to judgment, pursuant to § 2 of the Interest Act (Ill Rev Stats 1965, c 74, § 2). The motion was denied. Both appeal.

Defendants' defenses are many, most in the way of avoidance rather than straight denial. They do deny they opted for (2) and assert it was (3), hence they owe nothing. Did they or didn't they build it themselves? If they didn't, then plaintiff is right, for the apartment was built. Our review of the evidence on this point discloses a factual question which was resolved by the verdict, indeed answered specifically. This answer by the jury is not against the manifest weight of the evidence, therefore, defendants' citation of Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504, is not apropos.

In avoidance, defendants argue that plaintiff violated the Illinois Architectural Act (Ill Rev Stats 1965, c 10½) by agreeing to and indeed performing architectural services without being licensed. Plaintiff agrees that it is not a corporation which can offer and engage in such services but denies that it either agreed to or did so. The practice of architecture as defined in the Act, § 2, includes the offering or furnishing of professional services in connection with the construction or erection of any building, structure or project. Is this agreement an offer by plaintiff to perform architectural services? Even if it is not, did they do so in fact? If the answer is yes to either question, plaintiff's right to recover becomes murky, to say the least.

■■ We are of the opinion that offering to develop a plat layout (2a) to show placement, total buildings, etc., is not so connected with "construction" that it partakes of doing what architects do. If this is so, then performance likewise is outside of the Act. To be sure, there is a nexus between the layout and construction in the sense that placement must precede construction— but then so must the idea itself. "Construction" at the

very least, means getting off the ground by going either up or down, not just thinking about it, and plaintiff's plat layout here, "to show building placement, total buildings, recreation area, parking, etc." is certainly not construction nor connected with it to the extent that it falls within the statutory definition. The layout was developed first to please defendants and upon their approval, to convince the municipal authorities of the project's desirability and to gain their approval. To be sure, a plat layout can at times be a very complicated business calling for the collaboration of a battery of experts—surveyors, engineers, planners, landscapers, even lawyers—but in bringing their varied expertise to bear, none are thereby transmogrified into architects—and vice versa. As is said in 5 Am Jur2d 665, § 3, Architects, "[T]he making of a survey of existing conditions, with recommendations and preliminary sketches and layouts, with regard to work needed on a hotel building, constituted nonarchitectural services."

■ Likewise with regard to 2b, causing plans of the proposed building to be drawn for loan submission, is not a statement by plaintiff that it will perform architectural services, rather, it is an agreement that they will cause such plans to be drawn for such purpose—loan submission—which may or may not be eventually connected with the projected construction and which may or may not be drawn by an architect—it all depends on how much detail the banker wants. We cannot assume that the implementation of this condition without more renders this contract void from its very beginning. It is neither an "offering" nor a "furnishing" so long as performed for the stated purpose.

■ The proof is that at plaintiff's behest a non-Illinois architect prepared these plans for such purposes. In causing such to be prepared and limiting their use to the stated end—loan submission—plaintiff was not playing architect. Of course, since plaintiff did not build

the apartment it can hardly be accused of using these plans in "connection" with its "construction," assuming their suitability. Whether the plans as drawn by the outside architect would have been the ones used had plaintiff been the builder is therefore irrelevant. Likewise, 2c—obtaining financing—has even less to do with architecture—if anything at all. We can only conclude that the contract itself is not void as an agreement by plaintiff itself to play architect, and what it did do, so far as it went, was not the furnishing of architectural services. Recovery cannot be avoided on this score.

■ Next, defendants say that their contract and plaintiff's performance of it took place when plaintiff, a foreign corporation, lacked authority to transact business in Illinois, hence plaintiff lacked standing to sue. Section 157.125 of the Corporations Act, (Ill Rev Stats 1965, c 32) provides in part:

> "No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain an action at law or in equity in any court of this State, until such corporation shall have obtained a certificate of authority."

It is true that at the time the agreement was entered into and plaintiff did what it did it was without authority to do so. But, it obtained the authority prior to filing suit. We read this section to mean that an out of state corporation with an Illinois based cause of action can't sue *until* it has a certificate. This being so, plaintiff is *in* not out of court.

■ Even so, defendants tell us that the $4,000 "fee" is really a penalty and not a fee or liquidated damages and since plaintiff neither alleged nor proved damages none can be recovered. The last paragraph of the agreement seems perfectly plain. It says that if defendants select someone other than plaintiff to build after they have performed, there shall be due plaintiff "a fee in

284

the amount of $4,000.00." On the face of this there is nothing to suggest a penalty. Does the proof belie this?

The services required of plaintiff on paper were substantial. The fee was to be paid only if they did not get the job. The services were performed—though what actually was done is germane only in discovering whether the words actually used meant something else, that might give us a clue that "fee" means "penalty." Plaintiff did appear before the plan commission of the city, the change in zoning was effected, it did prepare a feasibility study and the plans did help to secure a commitment for a substantial loan—$190,000. Plaintiff then solicited bids. All this took some doing and in the doing considerable time and some expense. The amount—$4,000 —is not out of line with these services, indeed, reasonable in every respect. Again, we are not saying that the fee should be paid because plaintiff performed these services, rather performance demonstrates that the "fee" is not a penalty—the exaction of an exorbitant sum of money which "does not, in fact, cause anything like equivalent damage to [plaintiff]." Burnett v. Nolen, 336 Ill App 376, 84 NE2d 155. We conclude that the "fee" is not a penalty. Simply put, the agreement gave defendants the option not to contract with plaintiff as their builder but with another and provided in that happenstance for the payment of a sum as liquidated damages as a reasonable recompense for the work they would have already done, since they would be denied the opportunity to be the builder, presumably something that would make up for their labors.

If defendants hadn't built the building there would have been no fee. If defendants had built it there would have been no fee, and if plaintiff had built it, again, there would have been no fee. But, as we have seen, defendants opted otherwise, and the fee condition became operative. It doesn't seem a bit unreasonable to us that a very important part of the consideration for this contract was

285

plaintiff's hope that the apartment would be built and that it would build it, but if not, it should be reasonably recompensed for an *agreed* figure for the trouble it anticipated it would be put to in performing what was required. Defendants not only agreed that such would be the case under a given circumstance, but they had the right to create the circumstance and they did just that.

Apropos here is the following from Burnett v. Nolen, 336 Ill App 376, 84 NE2d 155, pp 156–157:

> ". . . For many years it has been the policy of the courts to constitute themselves the guardians and protectors of the individual who, though competent to contract, has entered into an improvident agreement to pay an exorbitant sum of money in event of his default in some respect which does not, in fact, cause anything like equivalent damage to the other party. Such a provision is called a 'penalty,' and the courts refuse to enforce it. On the other hand, courts do not desire to prohibit the parties from agreeing upon a reasonable sum as *liquidated damages* for breach of contract, especially where the possible damages are of such a nature they cannot be readily calculated or proved. . . .
>
> "The following are some, but not all, of the elements considered by the courts in an attempt to solve the problem: . . . (3) The fact that the contract does not purport to require or prohibit a certain act, but merely gives the option to do a particular thing or, in the alternative, pay a stipulated sum. The court may then hold the party had his election."

 What about fraud? Defendants say that they were lulled into the agreement by misrepresentations that the building would not exceed a certain sum. Misrepresentations, as we know, can in some circumstances constitute a fraud and vitiate an agreement. It is an affirmative defense in our context. Thus it must be alleged

and proved by clear and convincing evidence. It is not alleged nor would the proof sustain such had it been. It is hard to see how the representations given as to the "not to exceed" figure, induced defendants to enter into this contract. The representation was as to future cost—an opinion—and the differential even then, between it and the final figure was hardly alarming in this day of rising construction costs—which we notice judicially—and the final figure *was* within the "available financing." The Court's various rulings in denying its effect as a defense was not error. What is more, the question of its presence was passed to the jury and their answer, implicit in the verdict, is most assuredly not against the manifest weight of the evidence. We hold that upon defendants' choice of option (3), terminating plaintiff's services and contracting with another builder rendered defendants liable for the payment at "that time" of the fee of $4,000 to plaintiff.

■■■■■■■ Is plaintiff entitled to interest from "that time," May 1, 1965, to be included in the judgment rendered December 8, 1967? Section 2 of the Interest Act, Ill Rev Stats 1965, c 74, reads:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note or other instrument of writing; . . . ."

For interest to attach, prior to judgment, absent an agreement, the amount must be fixed, or determinable, and due, in the sense, that a debtor-creditor relationship has come into being. Here, the instrument very clearly said that the fee—indubitably, a fixed amount—would become "due and payable at that time" that defendants opted not for plaintiff but for another builder. It seems clear to us, at that instant interest began to run. The fact that the parties could reasonably differ as to defendants' liability is not a consideration so far as

the statute is concerned. Clark v. Dutton, 69 Ill 521. The fact, too, that the complaint did not ask for interest is of no moment as the Act, where applicable, will be read into the complaint. Haley v. Supreme Court of Honor, 139 Ill App 478. The procedure followed by plaintiff in moving after verdict and before judgment for the inclusion of interest was the proper course and its motion for interest should have been allowed.

Accordingly, the judgment against defendants will be affirmed and the cross-appeal of plaintiff allowed. The cause is remanded with directions that plaintiff's motion be allowed.

It is so ordered.

Affirmed in part; reversed in part and remanded.

CRAVEN, P. J. and MILLS, J., concur.