UNITED STATES of America ex rel., THORLEIF LARSEN AND SON, INC., a Corporation, Plaintiff-Appellee,

v.

B. R. ABBOT CONSTRUCTION CO., a Corporation, and Reliance Insurance Co., a Corporation, Defendants-Appellants.

No. 18112.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1972.

Decided Aug. 11, 1972.

Rehearing Denied Oct. 16, 1972.

Ray M. Foreman and Kenneth H. Clapper, Foreman, Meachum & Clapper, Danville, Ill., for defendants-appellants.

John B. Jenkins, Danville, Ill., Edwin A. Hofeld, Chicago, Ill., Gunn, Hickman, Kesler, Jenkins & Vogel, Danville, Ill., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, PELL, Circuit Judge, and DURFEE, Senior Judge.*

DURFEE, Senior Judge.

This action for the use and benefit of Thorleif Larsen and Son, Inc., was brought under the Miller Act, 40 U.S.C. § 270a et seq., for the balance due for work done under a contract with the B. R. Abbot Construction Company [hereinafter referred to as Abbot]. Reliance Insurance Company, the co-defendant, was Abbot's payment bond surety, as required by the Miller Act. The District Court allowed Larsen a total of $27,723.-96, which sum Abbot admitted it owed Larsen, and also allowed Abbot, on its counterclaim, $6,114.50 against Larsen. The defendants appeal from the resulting judgment entered for Larsen in the amount of $21,609.46 plus interest from June 30, 1966.

Abbot was the prime contractor for the construction of three airmen's dormitories and other related work at Chanute Air Force Base in Rantoul, Illinois, pursuant to Contract No. DA–11–032–Eng.–10065 between Abbot and the

* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

United States of May 25, 1964. On June 10, 1964, Abbot and the use-plaintiff [hereinafter referred to as Larsen] entered into a subcontract which provided, *inter alia*, that Larsen, as subcontractor, would furnish all labor, materials and equipment necessary for the performance of the masonry work on the three dormitories. In consideration for the performance of this masonry work, Larsen was to receive $164,600.00, $26,542.78 of which was not paid.

The contract between Abbot and the United States provided that Abbot was to coordinate, schedule and supervise the work to be performed under said contract according to the "critical path method." This method provided a schematic diagram from which the detailed work activities to be performed by the prime contractor and by the subcontractors could be coordinated and scheduled. In its findings of fact, the District Court held that due to a strike by union employees at the Air Force base, Abbot had been forced to prepare a revised critical path method diagram to take into account the delay caused by this strike. These revisions were reflected by a print-out which Abbot prepared for Larsen on August 20, 1964, which contained the revised start and finish times for masonry work. Subsequently, due to delays in completion of the concrete structural work, Abbot, as prime contractor, was compelled to prepare a second revised critical path method diagram, dated September 30, 1964, which further postponed the start and finish times for the masonry work to be accomplished by Larsen as subcontractor. There was no evidence that Larsen was responsible for the delays which had necessitated these changes in the scheduling of the masonry work under the critical path method. Abbot and the subcontractors responsible for the structural concrete work, as opposed to the masonry work for which Larsen was responsible, failed to complete their work within the time limits set forth in the revised critical path method diagram of September

ber 30, 1964. In sum, the court below found that the total delay caused by Abbot and the subcontractors other than Larsen was 111 days on the South Dormitory, 116 days on the West Dormitory, and 127 days on the North Dormitory. These figures included the delay which was reflected in the revision of the critical path method diagram through September 30, 1964.

On February 8, 1965, Abbot notified Larsen in writing to commence work on the dormitories. Pursuant to its subcontract with Abbot, Larsen was obligated to begin work within seven days after receipt of this notice. Larsen, however, failed to do so and did not commence work until March 1, 1965. The District Court found that the total delay caused by Larsen was 79 days on the South Dormitory, 30 days on the West Dormitory, and 131 days on the North Dormitory. Subsequently, Abbot was assessed $3,525.00 in liquidated damages for the delay in completing the South Dormitory, $4,200.00 for the West Dormitory, and $3,825.00 for the North Dormitory. Additionally, there was an assessment of $1,350.00 for delay on the remainder of the project. The District Court apportioned the liquidated damages attributable to Larsen by multiplying the liquidated damages assessed with respect to each of the three dormitories by a fraction, the numerator of which was the number of days of delay in completing that dormitory attributable to Larsen and the denominator of which was the total delay in completing the dormitory, *i. e.*, that attributable to Larsen, Abbot and other subcontractors. Consequently, of the $12,900.-00 in liquidated damages assessed against Abbot, $4,270.70 was found to be attributable to delay by Larsen. This latter amount is comprised of $1,465.66 for delays on the South Dormitory, $862.89 on the West Dormitory, and $1,942.15 on the North Dormitory. In addition to $4,270.70, Abbot was also held to be entitled to $1,843.80 for certain cleanup work which it had per-

formed for Larsen's benefit. Thus, Abbot was able to prevail on its counterclaim to the extent of $6,114.50.

In addition to the contract balance, as diminished by Abbot's counterclaim, Larsen was held to be entitled to $1,017.54 in additional compensation for work performed in connection with the construction of a drinking fountain alcove, pursuant to written authority obtained from Abbot and the Corps of Engineers, and $163.64 in additional compensation for certain remedial work. Larsen's entitlement to these amounts was stipulated by Abbot. Therefore, the District Court entered judgment for Larsen in the amount of $21,609.46, plus interest from June 30, 1966, the date on which Abbot received its final payment from the United States. The provision which the District Court made for interest was considered by that court to be in accordance with Section 2 of the Illinois interest statute (Ill.Rev.Stat., 1967, ch. 74, § 2), which provides, *inter alia*, that interest at five percent per annum shall be allowed "for all moneys after they become due on any * * * instrument of writing * * *."

■ The basis for this appeal is essentially two-fold: (1) the District Court misinterpreted the evidence and made erroneous findings of fact, and (2) the District Court erred in allowing interest on the amount found due from Abbot to Larsen. With regard to the first basis for this appeal, the lower court's finding that the delay which gave rise to liquidated damages being assessed was not solely attributable to Larsen was not clearly erroneous. The same is true with respect to the apportionment by the lower court of the delay and the apportionment of the liquidated damages between Larsen and Abbot, and the other subcontractors. Fed.R.Civ.P. 52(a). *See, e. g.,* O'Neill v. United States, 450 F.2d 1012 (3rd Cir. 1971).

■ The District Court is also correct in its interpretation of Section 2 of the Illinois interest statute, and its application of this statute to the facts presented in the case at bar. The contract balance due Larsen was a liquidated amount, and such amounts which become due on "instruments of writing" have been held to come within the purview of Section 2 of the Illinois interest statute, as interpreted by the courts of that state. *See* Kansas Quality Constr., Inc. v. Chiasson, 112 Ill.App.2d 277, 250 N.E.2d 785 (1969).

Affirmed.