MADISON PARK BANK, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, *v.* MICHAEL L. FIELD *et al.*, Defendants.—(THOMAS D. PHILIPSBORN *et al.*, Counterplaintiffs-Appellees and Cross-Appellants.)

Third District   No. 78-156

Opinion filed October 18, 1978.

Sidney D. Davidson and Baymiller, Christison & Radley, both of Peoria, for appellant.

Julian E. Cannell and David J. Dubicki, both of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On April 11, 1972, Michael L. Field and Richard M. Shure opened a checking account in the Madison Park Bank in the name of Fieldmoor Associates, a partnership. Fieldmoor Associates was owned by seven partners and on the day the checking account was opened written instructions were given to the bank that one signature only was required on checks up to $500 but two signatures were required on checks over $500.

On February 27, 1974, the bank accepted for payment a check in the amount of $9,000 payable to Michael L. Field & Co., dated February 23, 1974, drawn on the Fieldmoor account and signed by Michael L. Field only. Michael L. Field was a partner in Fieldmoor Associates and he converted the proceeds from the $9,000 check to his personal use.

The bank prepared monthly statements and after May 1972, the statements were sent to Fieldmoor Associates, Michael L. Field, at an address in Northfield, Illinois. The check in question and statement of account were mailed to this address on February 28, 1974.

A dispute arose between the partners of Fieldmoor Associates and for that and other reasons not material to this appeal the Madison Park Bank filed a complaint for interpleader naming the partners in Fieldmoor Associates as defendants. This and related litigation led to the discovery of the check in question, the date being May 15, 1975. An action was brought by certain partners of Fieldmoor Associates as counterplaintiffs against the bank for damages arising out of the payment of the $9,000 check since it was signed by only one instead of two counter signatures. On an agreed statement of facts, and without trial by jury, the circuit court of Peoria County awarded the counterplaintiffs a judgment for $9,000 and this appeal ensued.

The first issue presented in this appeal is whether section 4—406 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 4—406) bars a recovery by the counterplaintiffs for the bank's breach of their contract of deposit. The section provides as follows:

"§4—406. Customer's Duty to Discover and Report Unauthorized Signature or Alteration.

(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to

examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within 3 years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration." Ill. Rev. Stat. 1973, ch. 26, par. 4—406.

■■ We are of the opinion that the bank cannot utilize the provisions of section 4—406(4) as a defense to the claim of the counterplaintiffs since the absence of one or more authorized signatures on a check does not constitute an "unauthorized signature" within the meaning of the section. Section 4—406(4) (Ill. Rev. Stat. 1973, ch. 26, par. 4—406(4)) is inapplicable because it is only concerned with unauthorized signatures and alterations. An unauthorized signature or endorsement means one made without actual, implied or apparent authority and includes a forgery. (See Ill. Rev. Stat. 1973, ch. 26, par. 1—201(43).) The signature of Michael L. Field which appeared on the check in question was an authorized one. The check was not properly payable because of an unauthorized signature or an altered one, but because there was an absence of a signature and therefore there was a violation of the agreement entered into between the counterplaintiffs and the bank.

In concluding that section 4—406(4) is inapplicable we have relied

upon the reasoning as set forth in *Wolfe v. University National Bank* (1973), 270 Md. 70, 310 A.2d 558, and *G & R Corp. v. American Security & Trust Co.* (D.C. Cir. 1975), 523 F.2d 1164. We are aware of the holdings to the contrary in the similar cases of *Pine Bluff National Bank v. Kesterson* (Ark. 1975), 520 S.W.2d 253, and *King of All Manufacturing, Inc. v. Genesee Merchants Bank & Trust Co.* (1976), 69 Mich. App. 490, 245 N.W.2d 104. We are compelled to follow the cases of *Wolfe* and *G & R Corp.*, for to do otherwise results in what we believe to be a tortured construction and interpretation of section 4—406(4). Had this statute been intended to include protection to a bank where there is an absence of a signature such could have been written into the law. That such a provision is not in the law is readily understandable since an unauthorized, altered or forged signature would be more readily discoverable by a depositor; however, discovering a missing signature places no undue onus on a bank. All that would be necessary on the part of the bank to check the correct number of signatures on a check would be a quick perusal of the signature card in the bank's possession. Should the bank be relieved of this responsibility, such relief should come from the legislature and not by judicial fiat.

The bank argues that if section 4—406(4) is held to be inapplicable then the common law as established in our State applies and requires a depositor to complain of a missing signature within a reasonable time. In support of this argument the bank relies on the cases of *Phillip v. First National Bank* (1938), 297 Ill. App. 498, 18 N.E.2d 57; *Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, 110 N.E.2d 461, and *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank* (1931), 343 Ill. 347.

The counterplaintiffs object to this issue being raised in this appeal on the grounds that the cited cases set forth the affirmative defenses of estoppel and ratification and that such defenses should have been raised in the bank's pleadings before the trial court. In support of this objection the counterplaintiffs rely upon section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 43(4)), which in part provides as follows:

"The facts constituting any affirmative defense, such as * * * estoppel * * * and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, * * * in whole or in part, and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." Ill. Rev. Stat. 1973, ch. 110, par. 43(4).

We are of the opinion that the objection of the counterplaintiffs is well taken; however, even if we were of the opposite opinion we fail to see the

applicability of the cases cited by the bank to the case under consideration. In the *Phillip* case 33 checks were involved, each of which lacked a countersignature. The depositor had experience as a banker and was aware of his duty to check bank statements, yet over three years elapsed before he made a claim for reimbursement from the bank. The reviewing court made the following observation:

"* * * [P]laintiff was grossly negligent in the maintenance of his books and records and exercised no supervision whatsoever over his accounts, and because plaintiff not only had full knowledge that checks were improperly drawn, but by actually participating in the drawing of a series of checks in a manner similar to the checks upon which suit was brought ratified the practice and became estopped from holding the bank liable." *Phillip v. First National Bank* (1938), 297 Ill. App. 498, 18 N.E.2d 57, 61.

We note that in *Phillip* the reviewing court made the observation that counsel on both sides conceded that the general rule was that even if a depositor omitted all examinations of his statement and cancelled checks the bank would still be liable for wrongfully paying checks drawn on his account where it appears that the bank was negligent in paying them. The reviewing court, however, found the facts in *Phillip* were so unusual that it was impelled to find the depositor to be estopped from holding the bank liable.

We find that the case of *Phillip* provides little support for the bank's contention that it is entitled to relief upon the common law as established in our State. We reach the same conclusion in the cases of *Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, 110 N.E.2d 461, and *Cosmopolitan State Bank v. Lake Shore Trust & Savings Bank* (1931), 343 Ill. 347, 175 N.E. 583. In *Kores* a garnishment proceeding was involved and the reviewing court held that the depositor had ratified the bank's action in honoring 27 checks which lacked a countersignature when the depositor had acquiesced in the payment of such checks over a long period of time. As to the *Cosmopolitan State Bank* case, we fail to find how it in any way supports the bank's contention or can be construed to be applicable to the facts existent in the case before us. We cannot agree with the bank's contention that the common law in Illinois is that the counterplaintiffs in the instant case failed to complain of the missing signature within a reasonable time and as a consequence are precluded from making a claim for recovery of wrongfully issued funds.

Lastly, the counterplaintiffs as cross-appellants request that this case be remanded to the trial court with instructions that they be awarded interest at the rate of 5% per annum from February 27, 1974, to the date of judgment. The trial court denied a motion of the counterplaintiffs to

modify judgment to provide for the payment of interest. We believe that it should have been allowed and that interest should have been awarded from February 27, 1974, to the date of judgment. Section 2 of the Interest Act (Ill. Rev. Stat. 1975, ch. 74, par. 2) reads:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; * * *."

■■ ■ For interest to attach prior to judgment absent an agreement the amount must be fixed or determinable and due in the sense that a debtor creditor relationship has come into being. (See *Kansas Quality Construction, Inc. v. Chiasson* (1969), 112 Ill. App. 2d 277, 250 N.E.2d 785.) Consistent with the reasoning set forth in this opinion, the bank breached its contract with the counterplaintiffs on February 27, 1974, by wrongfully paying a check in the sum of $9,000. The sum of $9,000 is a fixed amount and the only amount that could be determined as due the counterplaintiffs. We do not charge the bank with failing to act in good faith, but good faith on the part of a debtor does not prevent an award of interest. (See *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 359 N.E.2d 797, and *Kansas Quality Construction, Inc. v. Chiasson* (1969), 112 Ill. App. 2d 277, 250 N.E.2d 785.) The fact too that the complaint did not ask for interest is of no moment, since the same is provided for by statute and will be read into the complaint. *Haley v. Supreme Court of Honor* (1908), 139 Ill. App. 478.

Accordingly the judgment against the bank entered by the circuit court of Peoria County is affirmed; the order denying the counterplaintiffs' motion for an award of interest is reversed; and this cause is remanded to the trial court for the purpose of computing and awarding interest consistent with the views expressed in this opinion.

Affirmed in part, reversed in part, and remanded with directions.

BARRY, P. J., and STENGEL, J., concur.