In the Matter of **FLORIDA AIRLINES, INC.**, Debtor.

**Chris C. LARIMORE, Trustee, Plaintiff,**

**v.**

**George & Catherine SALEMO, U.A. Life Title Co. of Arizona and Southeast Bank of Bradenton, Defendant.**

**Bankruptcy No. 80–79.**
**Adv. No. 80–273.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 3, 1986.

See also 17 B.R. 683.

Chris C. Larimore, Bradenton, Fla., trustee, Shirley C. Arcuri, Tampa, Fla., for plaintiffs.

C. Robert Pickett, Bradenton, Fla., for Southeast Nat. Bank of Bradenton.

Leonard H. Gilbert, Tampa, Fla., for U.S. Life Title Co. of Arizona.

William Knight Zewadski, Tampa, Fla., for Southeast Nat. Bank.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a Chapter 7 liquidation case, originally commenced as a Chapter 11 case but due to the Debtor's inability to achieve confirmation was converted to a liquidation case. The matter under consideration arose in an adversary proceeding commenced by the Debtor-in-Possession during the pendency of the reorganization. After conversion of this case to a Chapter 7 liquidation case on September 10, 1981, Mr. Chris Larimore was appointed trustee and he was substituted as Plaintiff in this adversary proceeding.

The original Complaint named as Defendants George P. Salemo, Catherine C. Salemo, his wife, U.S. Life Title Co. of Arizona and Southeast Bank of Bradenton (Bank). By amendment of Count VI of the Complaint, the Debtor, Florida Airlines, Inc. (Fla. Air), alleged that the Bank failed to exercise reasonable care in handling the Debtor's DIP account. The Debtor sought recovery on forty-four checks and four wire transfers paid from the account by the Bank. Two of the four wire transfers involved payment of a check to the payee and the payee's subsequent disbursement of the check proceeds. One of the wire transfers was a check transaction which resulted in the check proceeds being wired to the check payee. The Bank filed an answer to the Complaint and interposed a number of affirmative defenses. A Motion for Summary Judgment was filed on behalf of the Bank and an order was entered on this

Motion granting the Bank summary judgment on forty-two of the forty-four checks. All forty-two checks were co-signed by individuals authorized to sign on the Debtor's DIP account. Summary judgment was denied for the two checks paid on only one signature and for all wire transfers.

The Plaintiff/Trustee on November 16, 1982 filed a Motion for Summary Judgment on the remaining transactions, based on the allegations that there are no genuine issues of material fact and the controversy before the Court may be resolved as a matter of law. The record reveals the following undisputed facts:

Pursuant to an order entered on February 4, 1980, the Debtor was authorized to operate its business as a Debtor-in-Possession. Four days later the Debtor opened various DIP accounts with the Bank. Signature cards were issued to the Debtor, as customer, pursuant to coporate resolutions. The corporate resolutions identified four officers of the Debtor who were authorized to sign checks, drafts, orders or other instruments for the payment and withdrawal of monies, credits, items and property held by the Bank, in account of its customer. The corporate resolution required co-signatures by two of the four authorized signers for the corporation. George Salemo, President of the Debtor, first became authorized to sign instruments on behalf of the Debtor pursuant to a corporate resolution dated July 23, 1980.

There are two categories of transactions subject to disposition on Plaintiff's Motion for Summary Judgment. The first category involves the cashing of dual signature checks which resulted in wire transfer disbursements. One occurred on July 23, 1980 and the other on September 5, 1980.

On July 23, 1980, George Salemo presented check # 769 to the Southeast Bank, payable to George Salemo for $18,311.24. The check was properly signed by two other authorized signatures, Wyatt and Beekman. The funds were made available to George Salemo in compliance with the order of the check and Salemo then instructed Southeast Bank to disburse the

funds by wiring $16,276.34 to the Lincoln Bank of Philadelphia, Pennsylvania to be credited to the account of Aldeman & Levine. The Bank was also instructed to deliver a cashier's check (# 116714) to George Salemo in the amount of $2,029.90, payable to Western Union. Five dollars was charged as a fee by Southeast Bank for effectuating the wire transfer. These facts establish that the Bank merely negotiated a check properly drawn on the Debtor's DIP account and made the check proceeds available to the payee, George Salemo. There was no negligence on behalf of the Bank when George Salemo as an individual customer took advantage of the services the Bank offered in wiring a portion of his individual funds and obtaining a cashier's check for the balance. This conclusion is further supported by a specific Statute of this State, Fla.Stat. § 674.4–401 (1966) which provides that:

(1) xxxx

(2) A bank which in good faith makes payment to a holder may charge the indicated account of its customer.....

This section protects the drawee bank who pays a completed instrument in good faith according to the instrument as completed.

The second episode of the first category involves a wire transfer of September 5, 1980. The following events leading up to that transfer are as follows.

Prior to August 28, 1980, check # 834, payable to U.S. Life and Title of Arizona in the amount of $142,000, was presented with the requisite number of signatures to Southeast Bank for payment. The check was not immediately paid as the Bank was uncertain about the propriety of the endorsement of U.S. Life and Title. While the account of the Debtor showed a balance in excess of $142,000, not all of the items making up this account were collected. Therefore, the Bank requested and obtained written verification of the endorsement.

The Bank learned as it was preparing to honor the check by wiring the $142,000 to U.S. Life and Title of Arizona, that an item

deposited and credited to the account of the Debtor was being returned unpaid. Therefore, the Debtor's account did not contain $142,000 in collected funds with which to pay check #834. George Salemo, after being informed of this, instructed the Bank to honor the check to the extent of the collected funds in the Debtor's account. The Bank, according to George Salemo's request, wired $35,000 to U.S. Life and Title of Arizona. The Bank had proper authority to transfer funds out of the DIP account upon a properly signed check with the requisite authorized signatures.

It is the trustee's contention that the $35,000 wire transfer was a separate transaction independent of the presentation of the $142,000 check by Salemo. Therefore, the Bank was negligent in honoring same due to the fact that there was no proper authorization for the wire transfer of $35,000. The Defendant contends that the Plaintiff's position is not supported by the facts. The Bank contends that the Bank's authority to transfer funds out of the DIP account was predicated upon a properly signed check. Once the Bank had proper authority to debit the Debtor's account, the method of disbursement to the payee, i.e. money across the counter on wire transfer, became irrelevant. The Bank would have paid the entire $142,000 but for the return of an item deposited in the Debtor's account.

Further, the Bank contends that by the terms of the depositor's contract as recited on the reverse of the signature cards, the Bank could have honored the $142,000 check even if an overdraft was thereby created. In this case there was no overdraft as the Bank honored the check to the extent of the collected funds but did not loan the balance. Payment by the Bank to the extent of the collected funds was extended to the Debtor in response to instruction of the Debtor's president, one who had the apparent authority to provide such an instruction. Consequently, the Defendant contends, the Bank's conduct in this episode was reasonable and does not constitute negligence as a matter of law.

The second category of transactions subject to disposition on the Plaintiff's Motion for Summary Judgment consists of three transactions. First, a wire transfer pursuant to the oral authorization of George Salemo only in the amount of $9,095 occurred August 25, 1980. Second, check #836 dated August 8, 1980 was paid to Ed and Myra Freely in the amount of $700. Third, check #872 dated August 25, 1980 was paid to Jet South in the amount of $9,893. The checks paid by Southeast Bank of Bradenton did not have the requisite number of authorized signatures as they were signed only by George Salemo.

The Plaintiff contends that because the requisite authorization was not present at the time of the wire transfer of the $9,095 or at the time checks #836 and #876 were paid, the drawer Bank failed in its duty to exercise reasonable care by disbursing funds upon checks or orders which did not contain the requisite authorization in accordance with the Bank's agreement with its depositor. *Movie Films, Inc. v. First Security Bank of Utah, N.A.*, 22 Utah 2d 1, 447 P.2d 38 (1968). Further, the Plaintiff contends that if there is no dual signature on the check as required, the depositor is not liable for the Bank's payment of the checks. *Wolfe v. University National Bank*, 270 Md. 70, 310 A.2d 558 (Md.Ct. App.1973).

The Bank contends that there is a split of authority on the question of whether the absence of a required signature constitutes an unauthorized signature under § 4–406 of the Uniform Commercial Code. In *Rascar, Inc. v. Bank of Oregon*, 87 Wis.2d 446, 275 N.W.2d 108 (Wis.App.Ct.1978), it was held that the absence of a required signature constituted an "unauthorized signature". The rationale of the holding was that the authorized signature is the signature of the bank's customer. When the customer directs the bank to pay only those checks which bear two signatures, both signatures are necessary to make the customer's signature on a check an authorized

one. Because the bank's customer failed to report the unauthorized signatures to the bank within the one year period prescribed by § 4–406, its claims to recover for the unauthorized payments were barred. See also *Pine Bluff National Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253 (1975); *King of All Manufacturing, Inc. v. Genesee Merchants Bank & Trust Company,* 69 Mich.App. 490, 245 N.W.2d 104 (1976). Based on these, the Bank contends that even if an single signature on a two signature account constitutes an unauthorized signature under § 4–406 of the Uniform Commercial Code, the Bank would not be liable for knowing if depositors failed to report the unauthorized signatures to the Bank within the one year prescribed by § 4–406 of the Uniform Commercial Code. Thus, the Bank has interposed an affirmative defense of contributory negligence.

In opposition, it is the Trustee's contention that § 3–406 and § 4–406 do not apply in this instance because the lack of a second signature is not an "unauthorized signature" and therefore, a depositor does not have to notify the bank within a one year period as is the case with unauthorized signatures. In support of that contention, the Trustee cites *Madison Park v. Field,* 64 Ill.App.3d 838, 21 Ill.Dec. 583, 381 N.E.2d 1030 (1978).

Based on the foregoing, this Court is satisfied that there is no genuine issue of material fact concerning any of the transactions and while the trustee is entitled to summary judgment as a matter of law concerning the wire transfer in the amount of $9,095, the check #836 dated August 8, 1980 in the amount of $700 and check #872 dated August 25, 1980 in the amount of $9,893, the trustee is not entitled to recover for the wire transfer in the amount of $35,000 and the Bank is entitled to summary judgment in its favor concerning the wire transfer.

A separate final judgment will be entered in accordance with the foregoing.