FIRST DIVISION

May 17, 2004

No. 1-02-2835

PATRICK MILLIGAN, ) Appeal from the

) Circuit Court of

 Plaintiff-Appellee and             ) Cook County

 Cross Appellant, )

)

v. ) )

GERALD GORMAN and RIDGE CHRYSLER )

PLYMOUTH, L.L.C., ) Honorable

) Paddy McNamara,

 Defendants-Appellants and ) Judge Presiding.

Cross-Appellees. ) 

JUSTICE McNULTY delivered the opinion of the court:

A settlement agreement required Lawrence Foley to pay Patrick Milligan $150,000 out of the proceeds of a sale of assets to Gerald Gorman.  The agreement also required Gorman to take all steps necessary at the closing to cause Foley to make the payment to Milligan.  Foley did not pay Milligan, and a default judgment against Foley proved partially unenforceable.  Milligan sued Gorman for breach of the settlement agreement.  The court found that Gorman failed to take the steps necessary at the closing to protect Milligan, in breach of the agreement.  The court awarded Milligan the unpaid balance of the settlement amount, but the court refused to grant Milligan's request for prejudgment interest.  Gorman appeals from the judgment and Milligan cross-appeals from denial of prejudgment interest.

We hold that credible evidence supported the trial court's finding that Gorman breached the contract.  When Gorman failed to take steps at the closing to cause payment to Milligan, he and Foley both became debtors to Milligan, within the meaning of the Interest Act (the Act) (815 ILCS 205/2 (West 1998)).  Because the debt met statutory criteria for the award of interest, the trial 

court erred by denying Milligan's request for prejudgment interest.  Thus, we affirm in part and reverse in part, and we remand for recalculation of the judgment amount.

On October 2, 1998, Foley agreed to sell the assets of his automobile dealership to Ridge Chrysler Plymouth, which Gorman owned.  Three weeks later, Foley agreed to sell the same assets to Milligan.  When Gorman learned of the later agreement, he and Ridge sued for specific performance of their contract.  Milligan sought to intervene and filed his own complaint for specific performance of the agreement to sell the assets to him.

On November 18, 1998, the parties settled the case.  The settlement specified:

"2.  Foley agrees to pay the sum of $150,000.00 (one hundred fifty thousand dollars) to Milligan at the time of closing of the Buy-Sell Agreement between Foley and Gorman/John Barnard for the Dealership assets.

3.  Foley and Gorman agree to take all necessary steps at closing to cause the $150,000.00 payment referred to in paragraph 2 to be paid to Milligan in Cashier's funds out of the proceeds of the closing of the Foley-Gorman/Barnard Buy-Sell for the Dealership assets."

Milligan's attorney wrote to Gorman's attorney on February 4, 1999, seeking notification of the time and place of the closing so the attorney could arrange to receive Milligan's check.  Neither Gorman nor his attorneys sent any written response to the letter.  Gorman and Foley closed the sale on February 10, 1999.  Neither Milligan nor his attorney attended the closing.  At the closing Foley signed a separate agreement to indemnify Gorman and Ridge for any claim Milligan might file against them.  Gorman paid the full price due under the sales contract.  Foley and Gorman issued no check payable to Milligan and the closing statement showed no allocation of funds to Milligan.  Milligan received no proceeds from the sale.

Milligan sued Foley, Ridge and Gorman on March 2, 1999, for breach of the settlement agreement.  Gorman filed a cross-claim against Foley for indemnification.  Foley separately sued Gorman, claiming that Gorman's accountants undervalued Foley's assets at the closing, and therefore Gorman had paid less than the amount properly due under the contract for sale of the dealership assets.  Gorman and Foley settled the case when Gorman agreed to pay Foley an additional $126,000.

Gorman notified Milligan of the settlement and Milligan obtained a default judgment against Foley for $171,575.34.  Milligan served a citation to discover assets on Foley's attorney.  By order dated November 30, 2001, the court permitted the attorney to retain $26,000 as his fee, and ordered the attorney to pay Milligan the balance of $100,000.  Milligan received the payment on December 3, 2001.

On July 24, 2002, trial began on Milligan's claim against Gorman and Ridge.  Gorman admitted that he did not call Milligan to inform him of the closing, but he testified that he told Richard Carr, one of his attorneys, to call Milligan.  According to Gorman, Carr reported repeatedly calling Milligan's office on the day of closing, but he could not contact Milligan.  Foley's attorney then said he would accept the full payment and he would send Milligan his share of the proceeds.

Carr testified that Gorman never asked him to call Milligan, Carr never called Milligan, and Carr did not tell Gorman that he had tried to call Milligan.

Foley's attorney swore that he never said he would accept Milligan's money and send it to Milligan.  The attorney admitted that an escrow account used in the sale held $150,000.  He knew of no reason for failing to send that money to Milligan, apart from "the decision of the clients."  The attorneys discussed Milligan's interest with Foley and Gorman, and admitted that no court order required payment to Milligan.  Gorman agreed to "permit the transaction to close without Milligan being paid out of the proceeds as long as Foley would sign an Indemnification Agreement."

Milligan sought to introduce evidence of Gorman's finances to aid the court in assessing punitive damages.  The judge said:

"I don't think this is much different than a personal guarantee on a loan for a bank. *** [I]f we assess punitive damages, then everybody who didn't *** pay money when owed [should pay punitive damages].  *** I'm going to stick to my guns on the punitive."

The court disallowed the proffered evidence of Gorman's finances.

The court held that Gorman breached the settlement contract:

"[W]hen the agreement calls for [Gorman] to take all necessary steps, I frankly don't see [Gorman] taking all necessary steps.  [Gorman] took all necessary steps to close the deal and get the dealership, but [Gorman] had another agreement which was to take all necessary steps to get Milligan paid and that wasn't done."

The court entered judgment in favor of Milligan for the $50,000 he could not recover from Foley, but the court, without explanation, denied Milligan's request for prejudgment interest.

On appeal, Gorman argues first that the judge misunderstood the settlement agreement as including a personal guarantee.  When the court sustained Gorman's objection to evidence of his finances, the court first noted that Gorman's commitment appeared not "much different than a personal guarantee on a loan."  The comment, in context, does not show that the judge considered this a guarantee any more than it proved that she thought that the case involved a loan.  The judge explained that if she awarded punitive damages here, she should probably award them in all cases where a party fails to pay money when due.  The judge's ruling at the end of trial shows that the court correctly understood the settlement and held Gorman to his word that he would take all steps necessary to cause payment to be made to Milligan at the closing.  The judge relied solely on the words of the agreement, and not on an analogy to guarantees, in finding Gorman liable for breach of the agreement.  The record as a whole shows that the court did not misunderstand the agreement.  See 
People v. Thurmond
, 317 
Ill. App. 3d
 1133, 1141 (2000).

Next, Gorman contends that the evidence does not prove a breach of contract.  We will not reverse the court's finding of a breach unless it is contrary to the manifest weight of the evidence.  
Amalgamated Bank of Chicago v. Kalmus & Associates, Inc.
, 318 
Ill. App. 3d
 648, 655 (2000).

Despite Milligan's explicit request, Gorman did not notify him of the time and place of the closing.  Gorman testified that he told his attorney to call, but his attorney refuted the testimony.  Gorman also swore that Foley's attorney said he would send the appropriate amount to Milligan, but Foley's attorney swore that he said nothing of the sort.  The closing statement showed a complete allocation of funds for the transaction, with no funds allocated to Milligan.  The trial court found the attorneys more credible than Gorman.  We cannot say that the attorneys' testimony is so inherently incredible that we can overturn the court's credibility determination.  See 
Jones v. Consolidation Coal Co.
, 174 
Ill. App. 3d
 38, 44 (1988).

The evidence as a whole shows that Foley wanted to leave Milligan out of the closing, as long as the parties could do so without risking contempt of court.  Gorman agreed to close without allocating payment to Milligan once Foley agreed to indemnify Gorman for any claim Milligan made.  The credible testimony amply supports the court's finding that Gorman breached his agreement to take all steps necessary to cause Foley to make the required payment to Milligan.  We affirm the judgment finding Gorman liable to Milligan for breach of contract.

On the cross-appeal Milligan claims that the court erred by refusing to award him prejudgment interest.  Section 2 of the Act provides:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing ***." 815 ILCS 205/2 (West 1998).

Gorman does not deny that the written settlement agreement is an "instrument of writing" within the meaning of the Act.  See 
Cummings v. Beaton & Associates, Inc.
, 249 
Ill. App. 3d
 287, 318 (1992).  Gorman argues that Foley is the only debtor under the agreement, and therefore Milligan is Foley's creditor, but not Gorman's creditor.

This court generally accords deference to a trial court's decision on a request for interest on a judgment.  See 
Bank of Chicago v. Park National Bank
, 266 
Ill. App. 3d
 890, 900 (1994).  The Act allows considerable discretion for determination of whether an unreasonable delay warrants an award of prejudgment interest.  See 
John Kubinski & Sons, Inc. v. Dockside Development Corp.
, 33 
Ill. App. 3d
 1015, 1023 (1975).  But the Act mandates prejudgment interest, as a matter of right, when the creditor seeks payment of a fixed sum on an instrument of writing.  
New Hampshire Insurance Co. v. Hanover Insurance Co.
, 296 
Ill. App. 3d
 701, 706-07 (1998).  This court will not disturb the trial court's findings of fact pertinent to prejudgment interest unless those findings are contrary to the manifest weight of the evidence.  
Krantz v. Chessick
, 282 
Ill. App. 3d
 322, 327 (1996).  But we review issues of law 
de novo
.  
Joel R. v. Board of Education of Mannheim School District 83
, 292 
Ill. App. 3d
 607, 613 (1997).  Thus, when the parties have not disputed facts showing a fixed debt on a written instrument, this court has not deferred to the trial court's denial of interest. See 
Kubinski
, 33 
Ill. App. 3d
 at 1023-24; 
Tomaso v. Plum Grove Bank
, 130 
Ill. App. 3d
 18, 29 (1985).

Gorman admits that Milligan is a creditor under the settlement agreement, within the meaning of the Act, but Gorman claims that the agreement makes only Foley the debtor.  The Act does not define the terms "creditor" and "debtor."  Thus, we look to the purposes of the Act to aid in construction of those terms. 
Langendorf v. City of Urbana
, 197 Ill. 2d 100, 109 (2001).

The Act directs the award of prejudgment interest to fully compensate the injured party for the monetary loss suffered.  
McKenzie Dredging Co. v. Deneen River Co.
, 249 
Ill. App. 3d
 694, 698 (1993).

"If a creditor is denied payment of a sum rightfully his, he loses not only that sum but the right to use it.  In our society the use of money is worth money."  
Haas v. Cravatta
, 71 Ill. App. 3d 325, 332
 (1979).

When a written instrument establishes an amount due and the time for payment, the creditor has a right to interest.  
Tomaso
, 130 
Ill. App. 3d
 at 29.

A written instrument may make more than one person a debtor for purposes of the Act.  Thus, in 
Ricci v. Reed
, 169 
Ill. App. 3d
 1062, 1067-68 (1988), the recipient of a loan defaulted and the lender sued the loan's guarantor.  The appellate court directed the trial court to award the 
lender prejudgment interest from the date the recipient owed repayment.  See also 
KFK Corp. v. American Continental Homes, Inc.
, 71 
Ill. App. 3d
 304, 314-15 (1979).

The United States Court of Appeals for the Seventh Circuit construed the Act in 
Mutual Service Casualty Insurance Co. v. Elizabeth State Bank
, 265 F.3d 601 (7th Cir. 2001).  In that case a cooperative had an account with the 
defendant
 bank, and the written deposit agreement for the account listed the persons with authority to sign checks for withdrawals from the account.  An officer of the cooperative presented to the bank checks on the account with his signature.  Although the deposit agreement did not list the officer as one with authority to sign checks, the bank cashed the checks.  By taking cash from the checks the officer embezzled $83,000 from the cooperative.  
Mutual Service
, 265 F.3d at 609.  The cooperative's insurer reimbursed the cooperative for the loss and then sued the bank for breach of the deposit agreement.  The trial court entered judgment in favor of the insurer, and the court granted the insurer prejudgment interest under the Act.  
Mutual Service
, 265 F.3d at 611.

The court of appeals held that the deposit agreement qualified as an instrument of writing under the Act.  When the bank breached the deposit agreement by improperly cashing the checks, it became a debtor, and the cooperative became a creditor under the agreement, within the meaning of the Act.  
Mutual Service
, 265 F.3d at 629.  The court of appeals ordered the trial court to recalculate the amount of prejudgment interest to reflect the time that the insurer lost use of the money.

Gorman breached the settlement agreement when he paid Foley without taking any steps necessary to cause payment to Milligan.  Under the reasoning of 
Mutual Service
, Gorman then became a debtor, and Milligan became Gorman's creditor.  Foley also owed payment to Milligan, but the officer who embezzled money from the cooperative also owed the cooperative the money taken.  That debt had no effect on the bank's status as a debtor when it breached the contract.  See also 
Madison Park Bank v. Field
, 64 
Ill. App. 3d
 838, 843 (1978).  Here, as in 
Mutual Service
, the Act mandated an award of prejudgment interest for the time that the 
plaintiff
 lost use of the money.

Our decision serves the purposes of the Act.  The agreement established Milligan's right to use of the fixed amount of $150,000 from the date of the closing, February 10, 1999.  Gorman's breach of contract caused Milligan to lose use of that money for that time, and the Act protects Milligan's right to compensation for that loss.

The record as a whole shows that the trial court correctly understood the settlement agreement, and the evidence supported the finding that Gorman did not take the steps necessary at the closing to cause payment to Milligan of $150,000.  When Gorman breached the contract by making the payment to Foley without properly protecting Milligan's interests, he became a debtor to Milligan, within the meaning of the Act.  Therefore, under the Act, the court must award Milligan prejudgment interest on the debt.  We affirm the judgment against Gorman but we remand for an award of appropriate prejudgment interest.

Affirmed in part and reversed in part; cause remanded.

O'MALLEY, P.J. and McBRIDE, J., concur.