LOYDE HAAS, Plaintiff-Appellee, *v.* DAVE J. CRAVATTA, Defendant-Appellant.

Second District   No. 78-251

Opinion filed April 30, 1979.

Ronald F. Coplan, of Coplan & Dunagan, of Morrison, for appellant.

John Demling and Thomas A. Eckhardt, both of Glen Ellyn, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This action was brought by plaintiff, Loyde Haas, for the possession of certain real property based on the failure of the defendant, Dave Cravatta, to pay the balance of the purchase price due under an allegedly oral contract of sale. A second amended complaint reiterated the prayer for possession of the property and, in the alternative, asked for specific performance of the contract. In his answer to the second amended complaint defendant admitted the existence of the contract in question but denied that it was an oral contract. He further denied that plaintiff had a right either to possession of the property or to specific performance. After a bench trial the trial court entered judgment for the plaintiff and ordered possession of the premises restored to the plaintiff and the return of monies paid on the contract to the defendant. No specific ruling was made on the plaintiff's right to specific performance. Defendant appeals.

In March 1969 plaintiff agreed to sell and defendant agreed to buy certain real property owned by plaintiff. In connection with this agreement plaintiff and his wife signed and delivered the following document to defendant:

"                                                              March 13, 1969

Received of Dave J. Cravatta, the sum of $500.00 toward the total price of $11,000.00, for the purchase of our house located at 604 North Main Street, Savanna, Illinois

/s/ Loyde Haas
/s/ Olga Haas        "

Defendant took possession of the property in March 1969 and between that time and the time of trial defendant has either lived there, allowed his relatives to live there or collected rents from tenants living there. Defendant paid the insurance premiums and property taxes on the property until 1975, either directly or by reimbursing plaintiff. Plaintiff paid the 1975 property taxes due in 1976 and, although the testimony is not totally clear, plaintiff also apparently paid insurance premiums in 1976. Including the initial payments, defendant has paid $2000, reducing the total due on the principal to $9000. Title has never been transferred and remains in the name of plaintiff. Plaintiff has never formally tendered

title to defendant or prepared an abstract of title. Defendant has never demanded a tender of title.

Plaintiff testified at trial that both he and defendant expected the entire purchase price to have been paid within two months after the transfer of possession but that defendant had claimed continuing inability to raise the money. Plaintiff further testified that after some time he suggested that the defendant should pay interest on the money and defendant had agreed. Defendant denied the existence of any understanding that the entire price would be paid within two months and also that he had any agreement with plaintiff on the matter of interest. The record before us does not indicate exactly when defendant believed the money to be due. He apparently believed he would not have to pay the money for the property until he was able to because he and plaintiff were good friends and because he helped plaintiff to buy automobiles at cost.

The trial court granted plaintiff's judgment on the first count of the second amended complaint and gave plaintiff possession of the property stating:

> "Before the court can decide whether interest or specific performance can be allowed, the agreement must pass the Statute of Frauds (Chapter 59, Section 2, Ill. Rev. Stat., 1975).
>
> * * *
>
> * * * the terms and conditions [of the contract] are patently ambiguous. The memorandum has neither a due date for payment, a date for delivery of the deed, [nor] a requirement that title be clear. The agreement does not contain the signature of the party to be bound, Mr. Cravatta. In short, there exists no valid or enforceable agreement."

■■ Defendant contends that reliance on the Statute of Frauds by the trial court was incorrect as a matter of law. We agree for several reasons and therefore reverse the trial court's judgment for plaintiff on the first count. First, the Statute of Frauds is an affirmative defense that can be either pled or waived by a particular party. (See Ill. Rev. Stat. 1975, ch. 110, par. 43(4).) While in unusual cases a party may amend its pleadings to introduce the statute after trial has begun (see *Mapes v. Kalva Corp.* (1979), 68 Ill. App. 3d 362, 386 N.E.2d 148), a trial court cannot raise an affirmative defense *sua sponte. Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 354 N.E.2d 904.

■■■ Second, both parties admitted the existence of a contract in their pleadings and, therefore, have waived the Statute of Frauds. It is a very basic tenet of contract law that

> "The purpose of the statute is not to enable contractors to repudiate contracts that they have in fact made; it is only to

prevent the fraudulent enforcement of asserted contracts that were in fact not made." (Corbin, Contracts §§317-320, at 393 (1952).)

The fact that the memorandum had neither due date, a date for delivery nor a requirement that title be clear does not trigger the operation of the Statute of Frauds. Their absence may make for a more difficult job of interpreting the exact terms of the contract as the trial court may have to determine some "reasonable" terms. However, this does not make the contract unenforceable because of the Statute of Frauds. *Gerald Elbin, Inc. v. Seegren* (1978), 62 Ill. App. 3d 20, 378 N.E.2d 626; *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 295 N.E.2d 148.

■■ ■ Finally, defendant's failure to sign the memorandum does not provide plaintiff with any rights. A contract subject to the Statute of Frauds is voidable only. Where the agreement is signed by only one party it may be enforced by the nonsigning party, although he himself could not be compelled to execute it. *Estes v. Furlong* (1871), 59 Ill. 298.

We now turn to the issue as to what relief is appropriate. This can be divided into two subissues: whether plaintiff is entitled to specific performance and, if so, how much money should defendant pay?

The pleadings on this point are somewhat confusing. In the second count of his second amended complaint plaintiff prays for specific performance in the alternative. In his answer defendant denies the complaint for specific performance. The trial court awarded possession to the plaintiff and the return of the amount paid by defendant but made no mention or decision as to the specific performance contention of the plaintiff. The defendant then, in his brief as appellant, concludes that the cause be reversed and remanded and that specific performance be decreed upon the payment of $9000. Appellee, in his brief, substantially fails to address himself as to the issue of specific performance as prayed for in the second count of his second amended complaint. Rather than discuss these inconsistent claims at length, we will simply consider the merits of the claim for specific performance.

■ Defendant argues that plaintiff is not entitled to specific performance because he did not formally tender a deed to the property. This argument is without merit. There was no evidence at trial to dispute the readiness or willingness of plaintiff to perform while it was clear that defendant continually told plaintiff that he was unable to pay. Where one party evidences his readiness and willingness to perform and the other party refuses to go through with the deal, tender of a deed becomes unnecessary. (*Vulcan Corp. v. Cobden Machine Works* (1949), 336 Ill. App. 394, 84 N.E.2d 173.) The law will not require the doing of a useless and futile act. (*Lang v. Hedenberg* (1917), 277 Ill. 368, 115 N.E. 566.) We find under the facts of this case that the seller, the plaintiff herein, is

entitled to specific performance upon compliance with the conditions hereinafter set forth in this opinion.

■ We then turn to the question of what payment should consist of, more specifically, what, if any, interest is due. The plaintiff has asked for 8½ percent interest compounded annually. The law, however, does not automatically attach interest to debts. It can be recovered only on the basis of a contract or a statute. (*Gonzalez v. Danaher* (1975), 30 Ill. App. 3d 992, 332 N.E.2d 603.) Even if we were to assume that plaintiff accurately described his conversations with defendant on the subject of interest, these conversations do not evidence a clear agreement supported by consideration to pay 8½ percent compounded interest. Thus plaintiff is not entitled to interest on the basis of the contract itself.

This case may, however, fall within the requirements for accrual of prejudgment statutory interest. Section 2 of the Interest Act provides that:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all the moneys *after they become due on any bond, bill, promissory note, or any other instrument of writing*; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts * * *; on money received to the use of another and retained without the owner's knowledge; *and on money withheld by an unreasonable and vexatious delay of payment.*" (Emphasis added.) Ill. Rev. Stat. 1975, ch. 74, par. 2.

In the instant case there is a creditor-debtor relationship. At issue is whether a good faith dispute (manifested in this case by defendant's failure of tender argument) operates to bar statutory interest based on a writing.

Our appellate courts stand divided on this issue. The Fifth and Third Districts have held that such a dispute does prevent the accrual of statutory interest. The Fourth District and the First District have held that it does not. The First District has, however, given some support to both interpretations. The Fifth District set forth its interpretation in *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 398, 226 N.E.2d 270, 280, holding that it was error to allow interest on an amount due when that amount depended largely upon the construction placed on the terms of a contract and upon questions of fact about which there was room for a difference of opinion. The Third District in *Grandview Development Co. v. Finley Enterprises, Inc.* (1977), 46 Ill. App. 3d 848, 361 N.E.2d 305, and one case in the First District, *St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 316 N.E.2d 51, have subsequently followed this interpretation, relying on *Watson Lumber* as authority.

Analysis of the chain of precedent relied upon by *Watson Lumber*, however, reveals a critical misinterpretation of a supreme court case. *Watson Lumber* relies heavily on *O'Heron v. American Bridge Co.* (1913), 177 Ill. App. 405, a First District case. *O'Heron*, in turn, relies on *Imperial Hotel Co. v. H. B. Claflin Co.* (1898), 175 Ill. 119, 51 N.E. 610. *Imperial Hotel*, however, did not involve a single debt based on a writing but a running account. One clause in the interest statute specifically discusses accounts and allows interest "from the day of liquidating accounts." The court in *Imperial Hotel* first found that the account in question had not been liquidated and only then considered the "vexatious delay" clause as an alternative. At no time was the instrument in writing clause considered, presumably because of the existence of the clause directed specifically at accounts. Thus, *Imperial Hotel* does not support the contention that a good-faith dispute will bar statutory interest where a single debt is based on an instrument in writing.

■■ We feel the better rule to be the contrary one expressed by the Fourth District in *Kansas Quality Construction, Inc. v. Chiasson* (1969), 112 Ill. App. 2d 277, 287-88, 250 N.E.2d 785, 789-90, as follows:

> "For interest to attach, prior to judgment, absent an agreement, the amount must be fixed, or determinable, and due, in the sense, that a debtor-creditor relationship has come into being. * * * *The fact that the parties could reasonably differ as to defendant's liability is not a consideration so far as the statute is concerned.*" (Emphasis added.)

In accord are *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73, and *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 359 N.E.2d 797, both First District cases, and *John Kubinski & Sons, Inc. v. Dockside Development Corp.* (1975), 33 Ill. App. 3d 1015, 339 N.E.2d 529, a First District case. This rule is consistent with several supreme court cases upholding grants of statutory interest without any showing that the debtor had litigated in anything but good faith. See, *e.g., Bishop Hill Colony v. Edgerton* (1861), 26 Ill. 54; *Maltman v. Williamson* (1873), 69 Ill. 423; *Clark v. Dutton* (1873), 69 Ill. 521; and with our own decision in *Peoria Malting Co. v. Davenport Grain & Malt Co.* (1896), 68 Ill. App. 104, 107.

■■ We believe that the contrary rule expressed by the Fifth and Third Districts is incorrect because it confuses statutory interest based on "an instrument in writing" with statutory interest based on "vexatious delay." The latter obviously requires a showing of some bad faith on the part of the debtor while the former does not. Statutory interest based on a written instrument is not meant to be punitive but merely compensatory. A refusal to pay a debt when due, even when based on a good faith

dispute, means that the debtor has the use of the disputed funds until a court rules against him. If a creditor is denied payment of a sum rightfully his, he loses not only that sum but the right to use it. In our society the use of money is worth money. Use carries with it the opportunity to deposit or lend it at interest or, in the alternative, the ability to avoid the borrowing of other funds and paying of interest. It would be unjust as well as contrary to the language of the statute for us to ignore this economic fact of life.

■■■ Therefore we adopt the rule expressed in *Kansas Construction Company,* that a good faith dispute will not prevent the accrual of statutory interest based on a writing, and hold that defendant in the instant case is liable for the appropriate amount of interest. The statute states that the interest should accrue on "monies after they become due." Here the written memorandum is silent as to when the $11,000 is to become due. Plaintiff testified that it was to become due in two months from March 1969. Defendant denied that it was to be payable during that date, but the record does not reveal any specific suggestion of an alternative due date by defendant. We find that the amount was due, as plaintiff indicated, two months after defendant took possession of the property. Defendant has not provided us with an alternate due date. His comments, emphasizing his friendship with plaintiff and his (defendant's) supplying of automobiles to plaintiff at cost, are indicative only of possible reasons for plaintiff's failure to insist upon payment of the money when it became due. That plaintiff may have not pressed, or even not have demanded payment, is not relevent to when statutory interest begins to accrue. The important date is when the money became due. Demand for payment under the contract is not necessary as a condition precedent to the recovery of interest. (*John Kubinski and Sons, Inc. v. Dockside Development Corp.*) Thus the statutory interest began to accrue two months after defendant took possession and will cease to accrue on the date when the trial court, on remand, makes a final determination of the amount involved here.

The trial court must also take other amounts into consideration of its final order. Defendant must reimburse plaintiff for any monies spent on property taxes or insurance since 1969. Moreover, since plaintiff has apparently been in possession of the property since the decision below, he must turn over to defendant any rent collected during this period, if the entire property was available for renting or, the reasonable rental value of the property if it were not made available for renting.

We therefore reverse the trial court's decision that the Statute of Frauds made the memorandum unenforceable. We hold that plaintiff, upon tender of a marketable deed, will be entitled to specific performance and that specific performance consists of $9000, plus 5

percent interest on the unpaid balance of the debt calculated according to the timetable set forth above, less rents on the rental value of the property during plaintiff's post-1976 possession of the property, plus any property taxes or insurance on the property in question paid by plaintiff during or after 1975.

Reversed and remanded with instructions.

NASH and LINDBERG, JJ., concur.