2023 IL App (1st) 220788

No. 1-22-0788

Opinion filed June 9, 2023

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MAYA COTTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2016 L 5679 |
| | ) | |
| GREGG COCCARO, M.D., and ASSOCIATED | ) | Honorable |
| ST. JAMES RADIOLOGISTS, S.C., | ) | Israel A. Desierto, |
| | ) | Judge presiding. |
| Defendants-Appellants. | ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants Gregg Coccaro, M.D., and Associated St. James Radiologists, S.C., appeal the

$6.5 million jury verdict in this medical negligence case. This appeal raises the following two

issues: (1) did the trial court abuse its discretion in making a series of rulings related to evidence,

argument, and instructions that unfairly prejudiced defendants and thus warrant a new trial; and

(2) did the trial court err in awarding prejudgment interest because the General Assembly's 2021

amendment mandating prejudgment interest in personal injury and wrongful death cases (735

ILCS 5/2-1303(c) (West Supp. 2021)) violates the Illinois Constitution? Because we answer each

question, "No," we affirm the judgment for plaintiff for the reasons that follow.

¶ 2                                    I. BACKGROUND

¶ 3      At age 27, Maya Cotton discovered a pea-sized lump in her breast during a self-examination. Concerned, she asked her mother and her sister to feel it. They confirmed the lump and agreed that Cotton should see a doctor. Cotton went to a community health clinic for a breast exam, and a doctor there gave her an order for an ultrasound.

¶ 4      Cotton did not have a primary care physician, so her sister referred Cotton to Dr. Charlotte Mitchell. In March 2009, Cotton went to Dr. Mitchell for the first time and told her about the lump in her breast. Dr. Mitchell performed a breast exam and also felt the lump. After going over Cotton's medical history and family history, Dr. Mitchell gave Cotton an order for a mammogram and recommended that she go to St. James Hospital in Olympia Fields. Cotton took the first available appointment there. A radiology technician who performed the mammogram informed Cotton that the mammogram and ultrasound were clear and told her to do a follow-up for regular mammograms after the age of 35. Dr. Gregg Coccaro, a radiologist, had interpreted Cotton's mammogram and ultrasound.

¶ 5      The next month, Cotton went to Dr. Gail Cansler for an annual gynecological exam. During this exam, Dr. Cansler did a breast exam, and Cotton told her about the lump and the recent breast imaging she did at St. James Hospital. They discussed Cotton's age, her family history, the mammogram and ultrasound results, and the possibility of the lump being fibroid tissue. Dr. Cansler told her to follow up the next year with an annual appointment.

¶ 6      Several months later, Cotton went back to Dr. Mitchell because of chest pain. Cotton had also noticed that the lump in her breast felt a little bigger. Cotton informed her of the results from the breast imaging and of the conversation with Dr. Cansler about the lump. Dr. Mitchell noted

that the mammogram and ultrasound results were clear and told Cotton that "it was nothing to worry about." Cotton visited Dr. Mitchell several more times, but Cotton's breast lump was not the focus of these visits.

¶ 7    In May 2010, Cotton attended a family reunion in Mississippi. There, Cotton told a relative who was going through breast cancer treatment about her breast lump. After feeling the lump, the relative urged Cotton to get a second opinion. When she returned home, Cotton made an appointment with Dr. Syed Akhter. Cotton told him about the lump in her breast and the medical visits that she had in relation to the lump. After examining the lump, Dr. Akhter sent her to get an MRI, and the results suggested cancer. Dr. Akhter then sent Cotton to get a biopsy. The biopsy results came back positive for cancer.

¶ 8    In 2011, Cotton filed a medical negligence action against several healthcare providers—including Dr. Mitchell, Dr. Cansler, and Dr. Coccaro—in connection with their failure to diagnose her breast cancer. Dr. Mitchell and Dr. Cansler settled and were dismissed from the original action. Subsequently, Cotton voluntarily dismissed the suit without prejudice and refiled this medical negligence suit against medical personnel and professional entities involved in the breast imaging done at St. James Hospital.

¶ 9    The case proceeded to a jury trial, and a jury returned a verdict in Cotton's favor and against Dr. Coccaro and Associated St. James Radiologists in the amount of $6,528,000. The trial court entered a judgment on the verdict and denied Cotton's motion for prejudgment interest. Cotton filed a posttrial motion for an increase in the judgment award and also renewed her request for a prejudgment interest award. The briefing on this motion concerned the constitutionality of the prejudgment interest statute. See 735 ILCS 5/2-1303 (West Supp. 2021). The trial court modified

the original judgment order to include prejudgment interest, and Cotton withdrew her posttrial motion as moot. After a setoff for the prior settlements in the amount of $1,758,482.73, and the addition of prejudgment interest of $111,332.29, the trial court entered a judgment in the amount of $4,880,849.56 against defendants. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 10                                      II. ANALYSIS

¶ 11                                     A. Trial Errors

¶ 12    Defendants argue that a series of trial court errors deprived them of a fair trial because those errors, both individually and cumulatively, impeded their ability to present their theory that Dr. Cansler and Dr. Mitchell (not Dr. Coccaro) were the sole proximate cause of Cotton's injury. Separately, they also argue that the trial court abused its discretion in giving the jury a redundant issues instruction. We address each error in turn.

¶ 13        1. Exclusion of Evidence That Other Doctors Were "Wholly Responsible"

¶ 14    Defendants contend that the trial court abused its discretion by excluding evidence and argument that Dr. Cansler and Dr. Mitchell were "wholly responsible" for the delayed diagnosis of Cotton's breast cancer. Specifically, defendants contend that the trial court granted a motion *in limine* that excluded such evidence. We review a trial court's decision to exclude evidence on relevance grounds for an abuse of discretion. *Greater Pleasant Valley Church in Christ v. Pappas*, 2012 IL App (1st) 111853, ¶ 39. A trial court abuses its discretion "only if it act[s] arbitrarily without the employment of conscientious judgment, exceed[s] the bounds of reason and ignore[s] recognized principles of law [citation] or if no reasonable person would take the position adopted

by the court." (Internal quotation marks omitted.) *Schmitz v. Binette*, 368 Ill. App. 3d 447, 452 (2006).

¶ 15     Significantly, in granting the motion *in limine*, the trial court reasoned that the evidence would not show that Dr. Cansler and Dr. Mitchell were "wholly responsible" for the delayed diagnosis. When the trial court invited defense counsel to make a record, counsel effectively *agreed* with the court:

> "[DEFENSE COUNSEL]: With respect is [*sic*] motion No. 6, Judge, what I would comment is that we do not intend to offer any testimony from any person that Dr. Mitchell or Dr. Cansler was wholly responsible for --
>
> * * *
>
> What we do want to protect is our ability to assert and then argue once the evidence has been introduced to support our defense, which includes the fact that its sole proximate cause can be placed with Dr. Cansler and Dr. Mitchell, the primary care doctors in this case. And the Court has made it clear when we discussed this motion off the record that *** any argument that is properly based on evidence in the record would be permitted. And if that sole proximate cause evidence exists, we will be permitted to argue that they are, in fact, responsible for these injuries."

Defense counsel acquiesced in the trial court's evidentiary ruling, and having failed to object, defendants forfeited the argument on appeal. Further, defense counsel failed to raise the issue at trial and made no offer of proof. See Ill. R. Evid. 103(b)(3) (eff. Oct. 15, 2015); *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003) ("When a motion *in limine* is granted, the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court."). As a consequence,

we are left guessing as to what evidence was even excluded, and we have no way to weigh prejudice stemming from that ruling if it was, in fact, erroneous.

¶ 16    The suggestion that the trial court somehow hamstrung defendants from arguing sole proximate cause is unpersuasive. Indeed, a defendant has "the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause" of the plaintiff's injury. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101 (1995). Defendants had a full opportunity to, and in fact did, present evidence through their own expert witnesses that the negligence of Dr. Cansler and Dr. Mitchell was the sole proximate cause. The expert witnesses testified that an order for any follow-up studies, including a biopsy, would ordinarily come from the patient's primary care physicians, not from the radiologist. Defense counsel extensively argued in his closing argument that Dr. Coccaro was not to blame for the negligence of Dr. Cansler and Dr. Mitchell: "You cannot blame Dr. Coccaro for the failure of Dr. Cansler or Dr. Mitchell to do their jobs to follow-up on a palpable breast mass in their patients." No fewer than five times did he reference and blame the other doctors. The trial court's ruling only excluded the words "wholly responsible" from the defense's argument, and this, by itself, is plainly not enough to constitute an abuse of discretion.

¶ 17    Finally, defendants contend that the trial court mistakenly applied the principle underlying the Illinois Pattern Jury Instructions, Civil, No. 30.23 (2011) (hereinafter IPI Civil No. 30.23) (instruction on "Injury from Subsequent Treatment"). The record clearly shows the contrary: the trial court made no reference to this jury instruction in ruling on the motion *in limine*, and during the jury instruction conference, the court declined to give the instruction.

¶ 18      2. Proximate Cause Jury Instructions: IPI Civil Nos. 12.04 and 12.05

¶ 19    Defendants next contend that the trial court abused its discretion in giving IPI Civil Nos. 12.04 and 12.05 because defendants alerted the trial court that the supreme court had withdrawn these instructions. Generally, we review a trial court's decision to grant or deny a jury instruction for an abuse of discretion. *Bailey v. Mercy Hospital & Medical Center*, 2021 IL 126748, ¶ 42. When the question is whether the applicable law was conveyed accurately, however, the issue is a question of law, which we review *de novo*. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13. The standard for determining an abuse of discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). A reviewing court will not reverse a trial court for giving improper jury instructions unless they clearly misled the jury and resulted in prejudice to the appellant. *Id.* at 274.

¶ 20    Defendants had actually tendered IPI Civil Nos. 12.04 and 12.05 in long form, which were to be used where there was evidence tending to show that the sole proximate cause of the occurrence was something other than the conduct of the defendant. IPI Civil Nos. 12.04-12.05, Notes on Use. Cotton had submitted those instructions in short form, which did not instruct on the topic of sole proximate cause. During the jury instruction conference, defense counsel informed the trial court that the supreme court had withdrawn IPI Civil Nos. 12.04 and 12.05. The trial court indicated that it had not received any notice from the supreme court or the circuit court to that effect, and the parties retired to chambers to confirm. Defense counsel accessed the supreme court website but could not find any indication that the supreme court had withdrawn the instructions.

¶ 21   Illinois Supreme Court Rule 239(a) (eff. Apr. 8, 2013) provides that "[t]he most current version of the IPI Civil instructions is maintained on the Supreme Court website." The supreme court had withdrawn the disputed instructions in August 2021, but during the instruction conference in November 2021, the parties contend that it was not reflected on the court's website. The trial court indicated that it would instruct the jury according to the version of the instructions as maintained on the website. Significantly, defendants never tendered an alternative version of the instructions, never withdrew the disputed instructions, and, in fact, were responsible for tendering the obsolete instructions in the first instance. Against this backdrop, we cannot fault the trial court for acting in conformity with Rule 239(a).

¶ 22   Defendants further contend that IPI Civil Nos. 12.04 and 12.05 themselves were potentially confusing when given in conjunction with IPI Civil No. 15.01 and that IPI Civil No. 15.01 alone would have appropriately instructed the jury. Generally, an improper jury instruction is the basis for a new trial "only where the opposing party has suffered serious prejudice from the offending instruction." (Internal quotation marks omitted.) *Tabe v. Ausman*, 388 Ill. App. 3d 398, 405 (2009). Defendants have forfeited any issue with respect to IPI Civil No. 15.01, because they failed to object to the instruction and offered no alternative. See *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008) ("A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court."). Cotton had tendered IPI Civil No. 15.01, and it did not instruct on sole proximate cause.

¶ 23   With respect to IPI Civil Nos. 12.04 and 12.05, the trial court gave the instructions in the version defendants had tendered—in long form, which includes the second paragraph on sole

proximate cause. Defendants advocated for their version, urging the trial court to give the long form as opposed to Cotton's short form instructions. Notably, while defendants acknowledged the purported misleading nature of the instructions in long form,[1] they did not withdraw the instructions but rather confirmed their position that "if [the trial court is] going to give 12.04 or 12.05, [it] must give the second paragraph to both." The trial court gave the instructions defendants asked for, and defendants cannot claim error. See *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 116 (1985) (where the appellant proposed the disputed instruction and it was given in that form at its request, the appellate court did not reach the question because "[i]t is fundamental to our adversarial process that a party cannot claim error when it induced the trial judge's mistake"); see also *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001) (noting that allowing the defendant to challenge the very verdict forms he requested at trial "would offend all notions of fair play").

¶ 24    Finally, had the trial court declined to give IPI Civil Nos. 12.04 and 12.05 and instead gave only IPI Civil No. 15.01, as defendants argue now, the jury would not have received any instruction on sole proximate cause. The No. 15.01 instruction that Cotton had tendered—and to which defendants did not object—did not address sole proximate cause and only instructed the jury on the general concept of "proximate cause." Defendants' reliance on *Gretencord-Szobar v. Kokoszka*, 2021 IL App (3d) 200015, for the sufficiency of IPI Civil No. 15.01 is also misplaced. In *Gretencord-Szobar*, the plaintiff challenged the trial court's denial of IPI Civil No. 12.05 in

---

[1] We have previously found that a trial court properly submitted IPI Civil No. 12.04 to the jury where there was sufficient evidence to support the sole proximate cause theory concerning two other individuals. *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, ¶¶ 59-64 (relying in part on the supreme court decision in *Ready v. United/Goedecke Services, Inc.*, 238 Ill. 2d 582, 592 (2010)).

short form, arguing that the jury needed to know that it did not have to choose just one proximate cause of injury. *Gretencord-Szobar*, 2021 IL App (3d) 200015*,* ¶ 42. It did not involve any argument that the conduct of another person was the sole proximate cause of injury, and IPI Civil No. 15.01, which instructs that " '[i]t is sufficient if it combines with another cause resulting in the injury,' " was sufficient. (Emphasis omitted.) *Gretencord-Szobar*, 2021 IL App (3d) 200015, ¶ 43 (quoting IPI Civil No. 15.01).

¶ 25    In short, the trial court did not abuse its discretion in giving the instructions on sole proximate cause.

¶ 26                    3. Special Interrogatory on Sole Proximate Cause

¶ 27    Defendants argue that the trial court erred when it refused the following special interrogatory: "Was the failure of the clinicians to follow-up on the palpable lump in Maya Cotton's breast the sole proximate cause of the delayed diagnosis of her breast cancer?" Astonishingly, in their opening brief, defendants claim that the trial court has no discretion to reject a special interrogatory that is in proper form. While that *was* the law, it changed over three years ago: section 2-1108 of the Code of Civil Procedure, as amended, places the issue within the purview of the trial court's discretion for trials commencing on or after January 1, 2020:

> "*Within the discretion of the court*, the jury may be asked to find specially upon any material question or questions of fact submitted to the jury in writing. *** Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal to determine *whether the trial court abused its discretion*." (Emphases added.) 735 ILCS 5/2-1108 (West 2020).

Accordingly, we review the trial court's denial of defendants' request for a special interrogatory for an abuse of discretion.

¶ 28    At the end of the jury instruction conference, the trial court read defendants' proposed special interrogatory into the record and then concluded that the special interrogatory was irrelevant, cumulative, and potentially confusing since the trial court was already giving IPI Civil No. 12.04 on sole proximate cause. Defense counsel did not object to the trial court's characterization of the proposed interrogatory and instead stated that he had an alternate with different wording that might "cure" the trial court's concerns. The trial court invited counsel to submit the revised interrogatory for the record but indicated that the interrogatory would not be given. Counsel never submitted the revised interrogatory.

¶ 29    Special interrogatories "shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions." 735 ILCS 5/2-1108 (West 2020). To preserve an objection to a special interrogatory, a party must set forth the objection at the instruction conference with enough specificity so that the trial court is advised of the specific nature of the objection. *Gasbarra v. St. James Hospital*, 85 Ill. App. 3d 32, 37 (1979); see also *Lawler v. MacDuff*, 335 Ill. App. 3d 144, 149 (2002) ("In order to preserve an objection to the failure to give a jury instruction, the complaining party 'must provide the reviewing court with the content of the instruction conference establishing that the appellant there raised the argument that he advances on appeal.' " (quoting *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 350 (1980))). Here, defense counsel simply suggested that he had an alternative interrogatory with different wording. He never read it into the record or provided the trial court with a copy of it. From our perspective as a reviewing court, we

have no idea what the modified interrogatory would have provided and whether it would have alleviated the trial court's concerns.

¶ 30    As for the special interrogatory that counsel tendered, a proposed special interrogatory should not be repetitive, confusing, or misleading.[2] *Simmons v. Garces*, 198 Ill. 2d 541, 563 (2002). The trial court reasoned that the interrogatory was "already incorporated into both the 15.01, 12.04." Under the abuse of discretion standard,

> "a reviewing court does not decide whether it agrees with the circuit court's decision but, rather, determines whether the circuit court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." (Internal quotation marks omitted.) *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 67 (2007).

The trial court had already properly decided to give two instructions on sole proximate cause tendered by the defense. As such, the trial court acted within its discretion in refusing the proposed interrogatory as repetitive and potentially confusing.

¶ 31                          4. Restriction on Closing Argument

¶ 32    Defendants argue that the trial court abused its discretion in barring them from arguing that expert testimony regarding the negligence of Dr. Cansler and Dr. Mitchell was "unrebutted." Before the closing arguments, Cotton moved to bar the defense from arguing that Cotton did not bring an internist or gynecologist expert in the case. Cotton had such expert witnesses, but those

---

[2] Relying on *Smart v. City of Chicago*, 2013 IL App (1st) 120901, Cotton contends that the special interrogatory was not in proper form because it was prejudicial to her. In *Smart*, the opening phrase of the interrogatory read, " 'Was the contributory negligence of [the plaintiff],' " which improperly assumed the plaintiff's contributory negligence. *Id.* ¶¶ 38, 40. Defendants' proposed interrogatory here, at most, assumed the negligence of the clinicians, not of Cotton herself, and it is not prejudicial in the same way.

witnesses were barred by an earlier court order. We review a trial court's ruling on what constitutes appropriate comment on evidence in closing argument for an abuse of discretion. *Simmons*, 198 Ill. 2d at 571 ("The scope and character of closing argument are left to the discretion of the trial judge, who enjoys the best position to view the demeanor of counsel and the atmosphere of the trial." (Internal quotation marks omitted.)).

¶ 33    Defendants complain that this ruling unfairly restricted the defense argument on sole proximate cause by prohibiting a statement that the evidence was "unrebutted." The colloquy between the trial court and counsel indicates the limited scope of the trial court's ruling:

>    "[PLAINTIFF'S COUNSEL]: Oral motion in limine that [*sic*] barring the Defense from arguing that Plaintiff did not bring an internist expert or OBGYN expert in the case. As the Court knows, we tried to and were barred by judicial estoppel according to Judge [Lawler's] order.
>
>    THE COURT: Response.
>
>    [DEFENSE COUNSEL]: Only that item should be permitted to and fully intend to argue that the testimony that those two physicians—clinicians violated the standard of care is unrebutted.
>
>    [PLAINTIFF'S COUNSEL]: That's precisely what we're objecting to, Judge.
>
>    THE COURT: I will not allow the unrebuttal. You can state what the evidence is that allows you to reasonably—for certain things I don't find that unrebutted, and really, it would be highly prejudicial. I think you can get the same argument without violating my ruling now on the motion in limine."

Cotton sought to bar defense counsel from arguing that she did not bring her own expert witnesses regarding defendants' sole proximate cause argument because such statement would be misleading and thus prejudicial. As defense counsel confirmed with the trial court after the above colloquy, the trial court did not bar counsel from stating that the jury can decide the standard of care question based only on expert testimony and that, as to Dr. Cansler and Dr. Mitchell, the only expert testimony offered was that they violated the standard of care.

¶ 34    The effect of the trial court's ruling was little more than to preclude the defense from using the word "unrebutted." The trial court in no way unfairly restricted defendants' chief argument, and defense counsel fully set forth the argument, even commenting that "Plaintiff's experts all agree," which has essentially the same effect as stating that the evidence was unrebutted. It was not an abuse of discretion for the trial court to prohibit a misleading and prejudicial statement while allowing counsel to fully explain his argument to the jury without further restrictions.

¶ 35                        5. Prejudicial Issues Instruction

¶ 36    Defendants contend that the trial court gave a redundant issues instruction, which prejudiced them. Again, we review a trial court's decision to grant or deny a jury instruction for an abuse of discretion. *Bailey*, 2021 IL 126748, ¶ 42.

¶ 37    Here, the issues instruction from Cotton contained 10 allegations of negligence, and defendants' argument concerns three of them:

"• Dr. Coccaro failed to recognize and report the microcalcifications on the mammogram as suspicious for cancer; and/or

***

• Dr. Coccaro failed to recognize and report asymmetry; and/or

\* \* \*

> • Dr. Coccaro failed to recognize and report the microcalcifications and asymmetry
>
> present near the marker on [Cotton's] breast."

Defendants argue that the last issue statement was needlessly repetitive of two preceding statements because they allege the same instances of negligence.

¶ 38    Cotton maintains that defendants have also forfeited this issue by failing to submit an alternative issues instruction or to make a further record. A party waives the right to object to instructions or verdict forms given to a jury "when the party fails to make a specific objection during the jury-instruction conference or when the form is read to the jury." *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 869 (2004). Even if the party properly objects, he must still submit a remedial instruction to the trial court. *Id.* Here, defense counsel objected to the last statement as repetitive of the two earlier statements, the same basis on which defendants challenge the instruction now. However, he did not submit an alternative issues instruction even after the trial court explicitly allowed him until the next morning to check the record for a basis to support his argument. By failing to submit an alternative instruction, defense counsel has forfeited the issue.

¶ 39    In any event, the trial court observed that the last issue statement differs from other statements as it relates to the microcalcifications and asymmetry present near the marker on Cotton's breast. The evidence supported this theory as Cotton's expert witness testified that there was asymmetry "literally right over the marker where the palpation was presumed to be and where the microcalcifications were in that vicinity." This witness also testified that Dr. Coccaro deviated from the standard of care by failing to do an ultrasound himself and that Dr. Coccaro should have recommended a biopsy of the lump and the microcalcifications. While the witness also testified to

the negligence of the clinicians for failing to do their jobs to evaluate the possibility of cancer, his testimony adequately supported each allegation against Dr. Coccaro in the issues instruction. The trial court thus did not abuse its discretion in giving the issues instruction.

¶ 40          B. Constitutionality of the Prejudgment Interest Amendment

¶ 41  Defendants raise a host of arguments challenging the constitutionality of the General Assembly's amendment to the Code of Civil Procedure providing for prejudgment interest in personal injury and wrongful death cases. The amendment provides in pertinent part:

"In all actions brought to recover damages for personal injury or wrongful death resulting from or occasioned by the conduct of any other person or entity, whether by negligence, willful and wanton misconduct, intentional conduct, or strict liability of the other person or entity, the plaintiff shall recover prejudgment interest on all damages, except punitive damages, sanctions, statutory attorney's fees, and statutory costs, set forth in the judgment. Prejudgment interest shall begin to accrue on the date the action is filed. If the plaintiff voluntarily dismisses the action and refiles, the accrual of prejudgment interest shall be tolled from the date the action is voluntarily dismissed to the date the action is refiled. In entering judgment for the plaintiff in the action, the court shall add to the amount of the judgment interest calculated at the rate of 6% per annum on the amount of the judgment, minus punitive damages, sanctions, statutory attorney's fees, and statutory costs. If the judgment is greater than the amount of the highest written settlement offer made by the defendant within 12 months after the later of the effective date of this amendatory Act of the 102nd General Assembly or the filing of the action and not accepted by the plaintiff within 90 days after the date of the offer or rejected by the plaintiff, interest added to the

- 16 -

amount of judgment shall be an amount equal to interest calculated at the rate of 6% per annum on the difference between the amount of the judgment, minus punitive damages, sanctions, statutory attorney's fees, and statutory costs, and the amount of the highest written settlement offer. If the judgment is equal to or less than the amount of the highest written settlement offer made by the defendant within 12 months after the later of the effective date of this amendatory Act of the 102nd General Assembly or the filing of the action and not accepted by the plaintiff within 90 days after the date of the offer or rejected by the plaintiff, no prejudgment interest shall be added to the amount of the judgment. For the purposes of this subsection, withdrawal of a settlement offer by defendant shall not be considered a rejection of the offer by the plaintiff. Notwithstanding any other provision of this subsection, prejudgment interest shall accrue for no longer than 5 years." 735 ILCS 5/2-1303(c) (West Supp. 2021).

We review defendants' constitutional challenges to the prejudgment interest amendment *de novo*. *Kakos v. Butler*, 2016 IL 120377, ¶ 9. There, of course, is a strong presumption that legislative enactments are constitutional (*Bernier v. Burris*, 113 Ill. 2d 219, 227 (1986)), and defendants bear the burden of clearly establishing that the prejudgment interest amendment is unconstitutional (*In re Petition of Vernon Hills*, 168 Ill. 2d 117, 123 (1995)).

¶ 42    Before addressing the specifics of defendants' constitutional challenge,[3] we review some related concepts for context. The goal of tort law is to place a tort victim in a position as close as

---

[3] Defendants invoke the equal protection clause of the federal constitution but do not develop the argument. As a consequence, the argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Argument *** shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities ***. Points not argued are forfeited.").

possible to his original position, prior to the tort. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 406 (1997). Our civil justice system does this by an award of money damages to the tort victim commensurate with the injury he suffered. *McLane v. Russell*, 131 Ill. 2d 509, 523-24 (1989). The wrinkle is that the tort victim often waits years before his legal claim is adjudicated and reduced to a judgment. The tortfeasor has caused an immediate injury to the tort victim but does not make immediate recompense: he may not pay damages for years. So to fully compensate the tort victim, most jurisdictions in the United States provide for an award of prejudgment interest for the delay in paying damages. See 102d Ill. Gen. Assem., Senate Proceedings, March 25, 2021, at 37 (statements of Senator Harmon) ("As I said, forty-six other states already have some form of prejudgment interest.").

¶ 43    Until the 2021 amendment, Illinois did not permit recovery of prejudgment interest in personal injury and wrongful death actions. But for over a century, Illinois has allowed prejudgment interest where authorized by statute, contract, or equity. See 815 ILCS 205/2 (West 2020) (allowing for prejudgment interest in actions on an "instrument of writing" and seven other circumstances); *4220 Kildare, LLC v. Regent Insurance Co.*, 2020 IL App (1st) 181840, ¶ 51. The rationale for prejudgment interest is multifold. The prejudgment interest award complements the compensatory purpose of civil law by ensuring that the plaintiff is compensated not just for the actual injury but also for the delay in being made whole. *Neumann v. Neumann*, 334 Ill. App. 3d 305, 310 (2002) ("[T]he purpose of awarding prejudgment interest at the prime rate is to make the plaintiff whole by placing him in the position he would have been had he had the opportunity to use the funds wrongly retained by the defendant."); *McKenzie Dredging Co. v. Deneen River Co.*, 249 Ill. App. 3d 694, 698 (1993) ("[T]he purpose of awarding prejudgment interest is to fully

compensate a party when its money has been wrongfully withheld."). Conversely, it also ensures that a defendant is not unjustly enriched during that delay by retaining funds due to the plaintiff without cost: a defendant bears the full cost of his conduct. *Haas v. Cravatta*, 71 Ill. App. 3d 325, 332 (1979) ("In our society the use of money is worth money. Use carries with it the opportunity to deposit or lend it at interest or, in the alternative, the ability to avoid the borrowing of other funds and paying of interest. It would be unjust *** to ignore this economic fact of life.").

¶ 44    Prejudgment interest also promotes efficiency in the processing of legal claims, because it reduces a defendant's incentive to delay resolution of a case. In the absence of prejudgment interest, a defendant effectively enjoys an interest free loan from the plaintiff until judgment. *Cf. Gorenstein Enterprises, Inc. v. Quality Care USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) ("The defendant who has violated the plaintiff's rights is in effect a debtor of the plaintiff until the judgment is entered and paid or otherwise collected."). That delay not only burdens the court system by crowding dockets, but it also compromises the quality of justice since evidence degrades or is lost over time (a hardship falling disproportionately on the party with the burden of proof). See *Bochantin v. Petroff*, 145 Ill. 2d 1, 12 (1991) (Miller, C.J., dissenting) ("Faced both with crowded dockets and with diverse demands on scarce resources, the judicial system should be curbing, rather than encouraging, dilatory trial tactics."); Richard A. Posner, *An Economic Approach to Legal Procedure and Judicial Administration*, 2 J. Legal Stud. 399, 420 (1973) ("Evidence tends to decay with time (witnesses die, forget, etc.) ***. [T]he party with the burden of proof *** will be hurt more by decay of evidence than will the other party***.").

¶ 45    By extending prejudgment interest, Illinois law now recognizes that the historic justifications for prejudgment interest in contract cases apply with equal force to personal injury

and wrongful death cases. Providing a plaintiff with a more complete recovery and requiring a defendant to bear the full cost of his breach is consistent with basic fairness in contract or tort.[4] Indeed, this principle finds expression in our Illinois Constitution: "Every person shall find a certain remedy in the laws for all injuries and wrongs \*\*\*. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, § 12.

¶ 46                                    1. The Right to a Jury Trial

¶ 47    Defendants contend that the prejudgment interest amendment invades the jury's province as the exclusive arbiter of factual issues and imposes a prohibitive cost on defendants' exercise of their fundamental right to a jury trial. The Illinois Constitution guarantees the right to a jury trial as it existed at common law and at the time of the 1970 constitution's adoption. Ill. Const. 1970, art. I, § 13 ("The right of trial by jury as heretofore enjoyed shall remain inviolate."); *Kakos*, 2016 IL 120377, ¶ 36. The right attaches to all rights of action known at common law, such as claims for negligence, and preserves the right to have a jury decide all of the facts in controversy, including damages. *Interstate Bankers Casualty Co. v. Hernandez*, 2013 IL App (1st) 123035, ¶¶ 24-25; see also *Best*, 179 Ill. 2d at 412 (among a jury's essential functions in tort cases is the determination of damages). Upon finding for a plaintiff on the question of liability, a jury must determine the amount that will reasonably and fairly compensate the plaintiff for damages proven to have resulted from the defendant's wrongful conduct. IPI Civil No. 30.01.

---

[4] Indeed, consider the anomalous situation prior to the amendment: a personal injury attorney who breached a referral agreement had to pay prejudgment interest on an award of damages to a referring attorney to compensate for the delay in paying. *Raymond & Raymond, Ltd. v. Law Offices of Kenneth Chessick, M.D., Ltd.*, 2018 IL App. (1st) 172046-U, ¶ 106 ("[I]t seems somewhat outrageous to require the plaintiff, who had already been wrongfully denied its money by defendants, to persistently chase after defendants to recover the wrongfully withheld funds or risk losing its right to prejudgment interest."). But the profoundly injured tort victim in the underlying medical negligence action would receive "0" for the delay in her judgment.

¶ 48    Prejudgment interest, however, is not a component of tort damages but a statutory additur applicable when legislatively defined conditions are satisfied. See *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 180 (1999) (the right to a jury trial does not attach to special or statutory remedies that did not exist at common law (citing *People ex rel. Keith v. Keith*, 38 Ill. 2d 405, 408 (1967))). Prejudgment interest accrues based upon the delay in resolving a case and bears no relationship to a plaintiff's actual injury. Interest compensates for the use or withholding of money—not physical injury. See *Haas*, 71 Ill. App. 3d at 332.

¶ 49    Under the amendment, if a defendant fails to make a settlement offer within one year of the filing of the claim, the trial court imposes prejudgment interest on the entire judgment. 735 ILCS 5/2-1303(c) (West Supp. 2021). Conversely, if the jury's verdict exceeds the highest settlement offer, prejudgment interest is calculated against the difference. *Id.* If a jury finds for a defendant on the issue of liability, the trial court never assesses prejudgment interest. Thus, the method by which the jury calculates damages remains unchanged. See IPI Civil No. 30.01. The jury decides the facts and awards money damages, but the jury has no role in awarding prejudgment interest. It is a ministerial function for the trial court, no different from awarding costs, imposing postjudgment interest, or setting off the verdict, as in this case, to account for funds received from settling defendants.

¶ 50    The prejudgment interest amendment neither encroaches upon a jury's calculation of damages nor penalizes a defendant who elects a jury trial. " '[T]he object of a constitutional provision guaranteeing the right of a trial by jury is to preserve the substance of the right rather than to prescribe the details of the methods by which it shall be exercised and enjoyed.' " *Olson v. Chicago Transit Authority*, 1 Ill. 2d 83, 85 (1953) (quoting *People v. Kelly*, 347 Ill. 221, 224

(1931)). Because the prejudgment interest amendment does not impinge upon a fundamental constitutional right, it is not subject to strict scrutiny. See *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983) (where government action does not impinge upon a fundamental right, it "need not be tested by the strict scrutiny").

¶ 51                                    2. Due Process

¶ 52     Defendants argue that the prejudgment interest amendment permits double recovery for a single injury, depriving defendants of their property without due process of law. See U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2 ("No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."). Juries in personal injury and wrongful death cases, defendants claim, "routinely" account for the time value of money when weighing the nature, duration, and extent of a plaintiff's injury.

¶ 53     Because the prejudgment interest amendment does not impinge on the defendants' fundamental right to a jury trial, the amendment need only satisfy a rational basis to pass constitutional muster. See *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 368 (1986) ("When the statute under consideration does not affect a fundamental constitutional right, the appropriate level of scrutiny is the rational-basis test."). Thus, we will uphold the amendment so long as it bears a rational relationship to a legitimate governmental interest. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008).

¶ 54     In the prejudgment interest amendment, the General Assembly provides personal injury and wrongful death plaintiffs with an ancillary remedy long available to the plaintiffs in contract actions—compensation for the delay in being made whole. See 102d Ill. Gen. Assem., House Proceedings, March 18, 2021, at 103 (statements of Representative Hoffman) ("The whole idea of

tort *** is to make plaintiffs whole."). The prospect of prejudgment interest itself coupled with the express provisions related to a timely settlement offer seek to incentivize parties to settle their claims earlier in the legal process. See 102d Ill. Gen. Assem., Senate Proceedings, March 25, 2021, at 37 (statements of Senator Harmon) ("And a small business owner who is injured at her hospital and loses her business because she can't run it and has sued for redress of her injuries is at a disadvantage ***. The rules are structured in a way that encourages delay. This is a small adjustment to those rules to encourage a prompt settlement of a meritorious claim."). Illinois courts have long recognized that promoting the settlement of claims is a legitimate governmental interest that the legislature may pursue through its police powers. See, *e.g.*, *Nguyen v. Tilwalli*, 144 Ill. App. 3d 968, 972 (1986) (Illinois contribution statute "clearly evinces a legislative intent to encourage settlements in tort litigation and promote judicial economy").

¶ 55　Defendants insist that prejudgment interest is duplicative of the jury's award because the jury assesses "the time value of a plaintiff's injuries prior to the entry of judgement." Not so. The jury receives no such instruction. The jury is never told of prevailing interest rates. There is simply no mechanism for a jury to award the equivalent of interest as tort damages. Our entire jury system is predicated on the notion that juries follow instructions. *People v. Taylor*, 166 Ill. 2d 414, 438 (1995). Defendants make much out of the pattern instruction that tells the jury to consider the "duration" of a tort plaintiff's injury (IPI Civil No. 30.01), but this is not some cryptic allusion to calculating interest. Rather, it instructs the jury to consider whether plaintiff's injury is permanent or temporary, and if temporary, for what duration.

¶ 56　There is a pattern instruction that instructs a jury to adjust its award of damages based on concerns over the time value of money: future damages are compensable but the jury must discount

such damages to the present cash value. See IPI Civil No. 34.02. The instruction recognizes that it would create a windfall for a plaintiff to receive full compensation today for damages payable in the future. Thus, a defendant gets a discount employing the rationale that justifies prejudgment interest to a plaintiff. As one commentator observed prior to the prejudgment interest amendment, "Illinois courts are thus in the anomalous position of allowing to a defendant a credit for this 'prepayment' of debts not yet owed, but at the same time not debiting him for the postponed payment of debts he has already incurred." Michael J. Martin, *Prejudgment Interest: Implementing Its Compensatory Purpose*, 15 Loy. U. Chi. L.J. 541, 552 (1984).

¶ 57    The prejudgment interest amendment provides that the plaintiff shall recover interest on "all damages" except punitive damages, sanctions, and statutory fees and costs, so the provision by its plain terms provides for prejudgment interest on future damages. See 735 ILCS 5/2-1303(c) (West Supp. 2021). That seems illogical since the jury has already adjusted its award of future damages to present cash value, but other jurisdictions are on both sides of the issue. See, *e.g.*, *Edwards v. Daugherty*, 2003-2103, pp. 31-36 (La. 10/1/04), 883 So. 2d 932 (collecting cases). Illogical or imprudent, however, is not unconstitutional. See *New York State Board of Elections v. Lopez Torres*, 552 U.S. 196, 209 (2008) (Stevens, J., concurring) (" 'The Constitution does not prohibit legislatures from enacting stupid laws.' "). Legislation, at times, is a blunt instrument. Where the language of the statute is clear, as it is here, we have an obligation to enforce it. If experience proves that a new statutory provision requires refinement, the General Assembly—not this court—has the authority to rewrite it.

¶ 58    Defendants also contend that the prejudgment interest amendment violates due process because it "punishes" defendants for delays in litigation. Again, not so. The assessment of interest

is "neither a penalty nor a bonus, but instead a preservation of the economic value of an award from diminution caused by delay." *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 301 (1993). Regardless of the cause of the prejudgment delay, in the absence of a prejudgment interest award, a defendant benefits economically from retaining those funds until judgment, and a plaintiff bears a corresponding burden from the loss of those funds.

¶ 59                                  3. Special Legislation

¶ 60     Defendants argue that awarding prejudgment interest to personal injury and wrongful death plaintiffs to the exclusion of other tort victims violates the prohibition on special legislation in the Illinois Constitution. Further, they contend that by placing the corresponding burden to pay prejudgment interest on personal injury and wrongful death defendants, the amendment violates equal protection. The special legislation clause prohibits the General Assembly from conferring special benefits or privileges to a select group: "The General Assembly shall pass no special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. We review a special legislation challenge under the same standards applicable to an equal protection challenge. *Best*, 179 Ill. 2d at 393. Here because the challenged classifications do not burden a fundamental right or implicate a suspect class, we review the challenged classifications for a rational relation to a legitimate governmental interest. *Piccioli v. Board of Trustees of the Teachers' Retirement System*, 2019 IL 122905, ¶ 20.

¶ 61     Again, the General Assembly's objective in enacting the prejudgment interest amendment is clear: to recompense tort plaintiffs for the time value of money and to incentivize the settlement of claims. Ensuring a more complete recovery, promoting settlement, and easing the burden on

crowded court dockets are each legitimate legislative goals. And personal injury and wrongful death claims make up a significant portion of the case-types creating a back log on the civil docket in Illinois courts. See Admin. Office of the Ill. Courts, 2021 Statistical Summary 20 (2021), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/54868468-989e-45f4-8bb8-c3882ed3b175/2021%20Annual%20Report%20Statistical%20Summary.pdf [https://perma.cc/5HGB-QCKB] (statistically significant increase in number of all law cases filed versus disposed). The General Assembly could quite reasonably focus its reform efforts on these cases to the exclusion of other tort cases. A legislature need not choose the most comprehensive reform and often does elect to enact measures in a piecemeal fashion. *Anderson v. Wagner*, 79 Ill. 2d 295, 319 (1979).

¶ 62    Defendants further argue that the amendment discriminates against defendants joined more than one year after a plaintiff files a cause of action. The amendment provides that prejudgment interest "shall begin to accrue on the date the action is filed." 735 ILCS 5/2-1303(c) (West Supp. 2021). To avoid or reduce the sum of prejudgment interest assessed in a case that goes to judgment, a defendant must have made a settlement offer within 12 months of the action's filing date or the statutory amendment's effective date. *Id.* But these defendants lack standing to pursue this argument. See *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 460 (1997) (a litigant must be a member of the class against whom a statute allegedly discriminates to have standing to raise an equal protection claim). Separately, a reasonable trial court could construe the prejudgment interest amendment such that the grace period is one year from the filing of the action as to that defendant. See *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 22 ("A court has a duty to construe a statute in a manner that upholds its validity and constitutionality

if it can reasonably be done.").

¶ 63                    4. Separation of Powers

¶ 64    Defendants contend that the prejudgment interest amendment violates the separation of powers, because it "deprives the judicial branch of its constitutional role where the factual question of damages is at issue." See Ill. Const. 1970, art. II, § 1 ("The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."). The General Assembly has authority to enact laws providing prejudgment interest. See *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 256 (2006) ("The recovery of interest in this State *** is purely statutory." (quoting *Blakeslee's Storage Warehouses, Inc. v. City of Chicago*, 369 Ill. 480, 483 (1938))); *Alamo Rent A Car, Inc. v. Ryan*, 268 Ill. App. 3d 268, 277-78 (1994) (the legislature, not the jury, decides the legal consequences of the jury's factual findings). Nor does the prejudgment interest amendment usurp the judiciary's power because trial courts in money judgment cases lack discretion to impose prejudgment interest absent a statutory mandate. See, *e.g.*, *Stanphill v. Ortberg*, 2020 IL App (2d) 190769, ¶ 9.

¶ 65                    5. Three-Readings Requirement

¶ 66    Defendants argue that the General Assembly violated the Illinois Constitution's three-readings requirement. See Ill. Const. 1970, art. IV, § 8(d) ("A bill shall be read by title on three different days in each house."). The enrolled bill doctrine "provides that once the Speaker of the House of Representatives and the President of the Senate certify that the procedural requirements for passing a bill have been met, a bill is conclusively presumed to have met all procedural requirements for passage" such that the certification precludes judicial review. *Friends of the Parks v. Chicago Park District*, 203 Ill. 2d 312, 328-29 (2003). While defendants urge us to "revisit

th[e] issue" (*Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 260 (1992)), we do not possess the authority to disregard the Illinois Supreme Court's binding precedent. See *Yakich v. Aulds*, 2019 IL 123667, ¶ 13; see also *Cutinello v. Whitley*, 161 Ill. 2d 409, 425 (1994) ("[T]he 1970 Constitutional Convention specifically contemplated the use of the enrolled bill doctrine to prevent the invalidation of legislation on technical or procedural grounds. [Citations.] The Convention determined that the legislature would police itself with respect to procedure.").[5]

¶ 67                                   6. Retroactive Application

¶ 68     Defendants argue that even if the prejudgment interest amendment is not unconstitutional, it is unconstitutional to apply the amendment retroactively. They assert that because Illinois did not permit the recovery of prejudgment interest at the time that they committed their tortious conduct, they have a vested right in avoiding such interest, which the legislature cannot impair through a retroactive change in law. Whether a change in law should retroactively apply depends on legislative intent. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 39. Where the General Assembly has expressed that a change of law shall apply retroactively, we will give effect to the law's temporal reach unless doing so would unconstitutionally interfere with vested rights. *Id.* ¶ 64.

¶ 69     Defendants' argument is unpersuasive for two reasons. First, the prejudgment interest amendment provides that "prejudgment interest shall begin to accrue on the later of the date the action is filed or the effective date of this amendatory Act of the 102nd General Assembly," July

---

[5] "The three-reading requirement ensures that the legislature is fully aware of the contents of the bills upon which they will vote and allows the lawmakers to debate the legislation." *Accuracy Firearms, LLC v. Pritzker*, 2023 IL App (5th) 230035, ¶ 43. The prejudgment interest amendment's legislative history reflects that state representatives debated the bill before voting.

1, 2021. 735 ILCS 5/2-1303(c) (West Supp. 2021). The amendment does not apply to judgments entered prior to its effective date, so it is not retroactive in its application. See *Noe v. City of Chicago*, 56 Ill. 2d 346, 350 (1974) ("[T]here is a prospective application of the new interest rate from the effective date of the amendment.").

¶ 70    Second, defendants have no vested right in a particular remedy or procedure. *White v. Sunrise Healthcare Corp.*, 295 Ill. App. 3d 296, 300 (1998). The General Assembly may change or abolish remedies without infringing on a constitutional right. *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 190 (1952) ("[N]o constitutional right is necessarily violated by changing or abolishing a remedy available at common law ***."); see also *Fireman's Fund Insurance Co. v. Western Refrigerating Co.*, 162 Ill. 322, 323 (1896) (prejudgment interest statute "might be changed at any time, in the pleasure of the legislature, without impairing any contract, or affecting any vested right"). Defendants' reliance on *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 98-99 (2010), is misplaced, because *Lazenby* concerned the retroactive imposition of a new legal duty and not a remedial or procedural change such as here.

¶ 71                        III. CONCLUSION

¶ 72    For all these reasons, we affirm the trial court's judgment.

¶ 73    Affirmed.

---

### *Cotton v. Coccaro*, 2023 IL App (1st) 220788

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2016-L-5679; the Hon. Israel A. Desierto, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Scott L. Howie and Jeffrey E. Eippert, of Donohue Brown Mathewson & Smyth LLC, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael T. Reagan, of Ottawa; Clark M. Raymond, Patricia E. Raymond, and Robert L. Raymond, of Raymond & Raymond, Ltd., of Schaumburg; and Bruce R. Pfaff, of Pfaff, Gill & Ports, Ltd., and Yvette C. Loizon, of Clifford Law Offices, P.C., both of Chicago, for appellee. |

---

| | |
|---|---|
| *Amicus Curiae***:** | Nicholas Nepustil, of Benjamin & Shapiro, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

---