2025 IL App (1st) 232224-U

No. 1-23-2224

Order filed August 15, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| CROSSROADS HOTEL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2022 M1 713168 |
| | ) | |
| STEVEN TAYLOR, | ) | Honorable |
| | ) | Kerrie Maloney Laytin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court's judgment awarding plaintiff possession of the subject hotel unit and a monetary judgment for unpaid rent affirmed where defendant failed to provide a sufficient record to show the court erred by issuing improper jury instructions and prohibiting defendant from suing plaintiff for punitive damages.

¶ 2    Following a jury trial in this forcible entry and detainer action, the circuit court entered an eviction order granting possession of the subject hotel unit and a monetary judgment of $14,057 for unpaid rent and court costs in favor of plaintiff, Crossroads Hotel. On appeal, defendant Steven

Taylor, appearing *pro se*, contends the circuit court erred by issuing improper and incomplete jury instructions that conflicted with the language in section 5-12-150 of the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991)), which prohibits retaliatory eviction, thereby unduly influencing the jury into rendering an improper verdict. Taylor also contends that the court erred when it denied his request to sue Crossroads for punitive damages. We affirm the circuit court's judgment where Taylor failed to provide a sufficient record to show the court's rulings were erroneous.

¶ 3    The record on appeal consists only of the common law record. Documents in the record show that on August 25, 2022, Crossroads filed an eviction complaint against Taylor and all unknown occupants alleging Taylor was unlawfully withholding possession of hotel room 383 at 5300 S. Pulaski Road in Chicago. Crossroads further alleged Taylor owed it $9350 in unpaid rent from February 1, 2022, to August 31, 2022. Crossroads requested that the circuit court enter an eviction order granting it possession of the premises and the amount of unpaid rent.

¶ 4    Crossroads attached to its complaint a copy of the five-day notice it served to Taylor on August 9, 2022. The notice demanded payment of $9350 in rent within five days after the service date. It further stated that if Taylor failed to pay the amount due, his lease of room 383 would be terminated on August 16, 2022. The notice included an affidavit of service stating that the landlord, Daxa Patel, delivered the five-day notice to Taylor on August 9, 2022, and posted a copy of the notice on the main door of the premises the same day.

¶ 5    On September 20, 2022, the Cook County Sheriff personally served Taylor with an eviction summons. On October 21, 2022, Taylor filed his *pro se* appearance in the case and requested a 12-person jury trial. Taylor has appeared *pro se* throughout all the proceedings in this case.

¶ 6      On October 25, 2022, Taylor filed an answer/response to the complaint denying that he unlawfully withheld possession of the room and that Crossroads was entitled to an eviction order. Taylor stated that his answer also served as his cross-complaint against Crossroads. Taylor raised five counts against Crossroads: (1) a claim of harassment, stating that Crossroads' owner Roy Patel threatened Taylor with prison if he did not leave the hotel; (2) a claim of retaliation, stating that he told Roy's wife, Dee Patel, that Roy's threat was harassment, and the Patels then created the "ploy" that Taylor owed past due rent; (3) a claim of wrongful termination, in which Taylor stated that he also worked at the hotel and was fired for what the Patels claimed was stealing, which was not true; (4) a claim of "no accommodation," in which Taylor stated that he was fired and facing eviction after he told the Patels that he had a substance abuse problem; and (5) a claim of "emotional distress." Taylor requested $100,000 in "damages."

¶ 7      On February 7, 2023, Crossroads filed a motion for summary judgment requesting the court enter an eviction order and monetary judgment of $17,275 plus court costs against Taylor. Therein, Crossroads stated that Taylor rented room 383 for $550 per month and was still living there. Crossroads attached to its motion a computer printout of Taylor's "Summary of Rent" showing his rent assessments of $550 per month from January 2019 through January 2023, and a balance due of $17,275.

¶ 8      On February 27, 2023, Taylor filed a motion for leave to amend his cross-complaint. Therein, Taylor stated that he had been employed as a front desk clerk at Crossroads for seven years. During the first two weeks of June 2022, he "borrow[ed] roughly $4,500 from the daily receipts" over a period of three days. Each time he "borrowed" money, he left a note in the safe stating he had borrowed money and would explain to Dee Patel when she returned from vacation.

Taylor claimed he had previously borrowed a similar amount of money with her permission, but this time she could not be reached.

¶ 9    Taylor further stated that when the Patels returned from vacation on June 15, 2022, they asked Taylor why he needed the money. Taylor told them he had developed a substance abuse problem over the last six months, owed people money, and was afraid he was going to be hurt. Roy told Taylor that taking the money without permission was stealing. Roy fired Taylor and told him that if he left the hotel, he would not have him arrested. Taylor stated that he told Roy that he had nowhere to go and needed three days to move out. Roy told Taylor that if he did not move out by June 20, he would go to prison. On June 20, someone called Taylor in his room and asked why he was still there. Taylor replied that his lawyer had advised him that the threat that he would be sent to prison if he did not leave the hotel constituted illegal harassment. Taylor admitted in his motion that he "did not really have a lawyer" and was "bluffing."

¶ 10    Taylor further alleged that about a month and a half after he refused to move out, the Patels created the "ploy" that he owed past due rent. He claimed they initiated the eviction process as retaliation for him not leaving. Taylor asserted, "[i]t is not stated but a common practice at the hotel" that after awhile, employees do not pay rent. Taylor stated that he would call several employees and the Patels as witnesses. Taylor reiterated that he borrowed the money and had no intent to steal it. In addition, Taylor added a sixth count alleging Crossroads illegally kept his last paycheck and "cut off" his cable. Taylor stated that Crossroads' actions were willful, malicious, and outrageous. He stated that he was requesting to continue living at the hotel at his previous rental rate of $550 per month and seeking court costs and punitive damages of $120,000.

¶ 11    On March 24, 2023, the circuit court denied Crossroads' motion for summary judgment.

¶ 12    On July 21, 2023, the circuit court entered an order striking Taylor's counterclaim alleging harassment. The court also dismissed Taylor's counterclaims alleging wrongful termination, failure to provide an accommodation for substance abuse, and emotional distress. The court allowed Taylor to amend his counterclaim alleging retaliation.

¶ 13    On August 4, 2023, Taylor filed a motion to amend his counterclaim alleging retaliatory eviction. Taylor repeated many of the facts from his initial claim, including that he had borrowed money while the Patels were on vacation, that he owed money to people due to his substance abuse, and that the Patels threatened to have him arrested if he did not leave the hotel. Taylor stated that the Patels waited six weeks after threatening him before serving him with the five-day notice. He asserted that they waited so "no one would be able to connect the easily connectible dots." Taylor stated that he was not required to pay rent for the three years prior to the eviction proceedings because it was a common practice at the hotel that some employees were not required to pay rent. Therefore, Crossroads' claim that he owed $9350 for past due rent was "clearly" a retaliatory eviction.

¶ 14    Taylor also alleged a separate count for "fraud" alleging that Crossroads knowingly made a false claim that he owed rent. Taylor stated that he was seeking to remain in possession of the room and would pay $550 per month for rent. He also requested $100,000 in punitive damages for retaliation and fraud because Crossroads' actions were willful and wanton, malicious, and "with evil motive and a conscience indifference to the rights and safety of others and a knowingly disregard for the law."

¶ 15    On August 25, 2023, Crossroads moved to strike Taylor's counterclaims for retaliatory eviction and fraud pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615(a)

(West 2022)). Crossroads argued that Taylor failed to state a cause of action for retaliatory eviction under section 5-12-150 of the RLTO because he did not complain of any building, housing, or health code violations. Crossroads further argued that Taylor failed to allege any facts that supported a legal conclusion that it committed fraud.

¶ 16    Following a hearing on August 30, 2023, the circuit court granted Crossroads' motion and struck Taylor's two counterclaims. The court granted Taylor leave to amend his claim for retaliatory eviction.

¶ 17    On September 12, 2023, Taylor filed a motion to amend his counterclaim for retaliatory eviction. Taylor restated the facts from his prior counterclaim. He further stated that he told Dee Patel that he wanted to remain in his room and would pay $550 per month for rent, but she refused. He argued that the Patels' retaliatory act of attempting to evict him was in response to his protected act of exercising his right to stay at the hotel and pay rent.

¶ 18    The same day, Taylor filed a separate motion to file a counterclaim for punitive damages. Taylor argued that Crossroads tried to illegally evict him by threatening him with arrest and prison if he did not leave the hotel in connection with a work-related matter. Taylor stated that when he exercised his right to remain at the hotel, Crossroads fraudulently claimed he owed over $9000 and initiated eviction proceedings. Taylor asserted that punitive damages were warranted as punishment and to deter Crossroads from committing future bad acts as it previously had to pay $100,000 in damages for an illegal lockout and apparently had not learned from that incident.

¶ 19    On October 6, 2023, the circuit court entered an order denying Taylor's motion for leave to file a counterclaim for punitive damages. The court's written order stated that it was entered after the court heard Taylor's oral argument on his motion. The record does not contain a report of

proceedings from the hearing. The court's order further stated that a pre-trial conference was scheduled for November 14, 2023, and the jury trial was scheduled for November 15, 2023. The order specified that all pre-trial matters and motions would be addressed during the conference, including jury instructions.

¶ 20    On November 7, 2023, Taylor filed a motion for summary judgment. Taylor stated that he had lived at the Crossroads Hotel since 2014 and worked there from 2015 until June of 2022. He further stated, "I had not paid any rent since Dec. 12, 2019." Taylor restated the facts from his prior pleadings admitting that he "borrowed" money from Crossroads' daily receipts while the Patels were on vacation and that the Patels fired him on June 15, 2022, after he told them he had a substance abuse problem. Taylor stated that, after not being required to pay rent for three years, Crossroads served him with a five-day notice "fraudulently" stating that he owed $9350, then initiated eviction proceedings. Taylor asserted that Crossroads violated section 5-12-150 of the RLTO which prohibited retaliatory conduct by a landlord and argued that, as a matter of law, under the one-year rule of the RLTO, it was not possible for Crossroads to prevail at trial. Taylor claimed the Patels were merely angry with him, which did not allow them to illegally evict him.

¶ 21    Taylor attached to his motion copies of handwritten notes he claimed he left for Dee Patel when he borrowed the money and the computer printout of his rent summary showing he last paid rent on December 27, 2019.

¶ 22    On November 14, 2023, the date of the pre-trial conference, the circuit court entered a written order denying Taylor's motion for summary judgment. The court also ruled on Crossroads' motions *in limine*. The order also instructed Crossroads to "redraft the issues instruction." The order does not mention any other jury instructions. The record does not contain a report of

proceedings from the pre-trial conference or any other discussion regarding jury instructions. The written instructions issued to the jury at trial are contained in the record.

¶ 23    On November 15, 2023, following a jury trial, the circuit court entered judgment on the jury's verdict in favor of Crossroads and against Taylor in the amount of $13,475. The jury's verdict form stated that $5225 was for unpaid rent prior to August 16, 2022, and $8250 was for unpaid rent from August 16, 2022, to the present. Copies of 10 exhibits presented by Crossroads during the trial are included in the record. The exhibits include the five-day notice, Crossroads' records of Taylor's rent assessments and payments, and copies of handwritten notes stating that money was "borrowed." One of those notes was addressed to Dee, acknowledged money was borrowed "w/o your permission," and stated, "sorry, I was in real trouble."

¶ 24    On the same date, the circuit court entered an eviction order granting Crossroads possession of the subject hotel room. The order stated that Taylor must move out of the property on or before 6 p.m. on November 29, 2023, and if he failed to do so, the sheriff was ordered to evict him. In addition, the order granted Crossroads a monetary judgment against Taylor in the amount of $13,475 in rent and $582 in court costs for a total of $14,057.

¶ 25    The record contains an affidavit from the sheriff's office stating that on January 11, 2024, a team of deputies arrived at the hotel, met with the receiver, and was provided with a key for the room. The officers knocked on the door, announced their office, and entered the room as Taylor opened the door. The officers then cleared the room and posted a "no trespass" sticker on the door. Possession of the room was given to the receiver, and the eviction was deemed complete.

¶ 26    On appeal, Taylor first contends the circuit court erred by issuing improper and incomplete jury instructions that conflicted with the language in section 5-12-150 of the RLTO, which

prohibits retaliatory eviction, thereby unduly influencing the jury into rendering an improper verdict. Taylor states that the court allowed him to present his defense at trial that the eviction was retaliatory based on section 5-12-150. Taylor details discussions that occurred during the jury instruction conference. He states that he submitted section 5-12-150 as his jury instruction during the conference. He claims, however, that when the court issued the jury instructions, it altered the language of section 5-12-150 such that it eliminated the intended effectiveness of the statute.

¶ 27 Taylor further states that he told the trial court that the jury should be instructed that the burden of proof was on Crossroads to prove their conduct was not retaliatory but, instead, the court erroneously told the jury the burden of proof was on Taylor to prove his case. Taylor states that Crossroads did not produce any evidence that it required him to pay rent for the 3½ years preceding his termination, and that Roy Patel testified on cross-examination that he wanted Taylor out of the hotel immediately, thereby establishing his claim of retaliatory eviction. Taylor asks this court to overturn the circuit court's decision, rule in his favor, and award him $100,000 in damages.

¶ 28 In response, Crossroads argues that this court should strike Taylor's brief and affirm the circuit court's judgment because Taylor's brief fails to comply with the requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Specifically, Crossroads points out that Taylor's statement of facts and argument do not cite to the record as required by Rule 341(h)(6) and (7), and that his argument contains no citation to case law or legal authority other than a general reference to section 5-12-150 of the RLTO without including the language of the ordinance.

¶ 29 Alternatively, Crossroads argues that Taylor failed to provide a report of proceedings and, therefore, the record on appeal is insufficient for this court to find any error with the jury instructions or the jury's verdict. Crossroads argues that, consequently, this court should dismiss

the appeal with prejudice. Crossroads also argues that Taylor's argument is without merit because the circuit court did not abuse its discretion when it issued the jury instructions.

¶ 30    Initially, we acknowledge that Taylor's *pro se* brief fails to strictly comply with a few of the requirements of Rule 341(h). Taylor used the formatted brief approved by the Illinois Supreme Court and, overall, did an acceptable job of completing all the required sections. Crossroads is correct that Taylor did not cite to the record in his statement of facts and argument as required by Rule 341(h)(6) and (7), and that his argument lacks citation to sufficient legal authority in violation of Rule 341(h)(7). However, striking a brief or dismissing an appeal is a harsh sanction and only appropriate where the rule violations are so egregious that they hinder our ability to review the case. *Battle v. Chicago Police Department*, 2022 IL App (1st) 200083, ¶ 9. That is not the case here. We have a cogent appellees' brief from Crossroads to assist us with understanding the issue. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Thus, although we could dismiss the appeal based on the rule violations, in the interest of ensuring equal access to justice, we choose not to do so. *Battle*, 2022 IL App (1st) 200083, ¶ 10.

¶ 31    Generally, the decision regarding which jury instructions to use falls within the sound discretion of the trial court and that determination will not be disturbed on appeal unless the trial court abused its discretion. *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). "The standard for determining an abuse of discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Cotton v. Coccaro*, 2023 IL App (1st) 220788, ¶ 19. "A reviewing court will not reverse a trial court for giving improper jury instructions unless they clearly misled the jury and resulted in prejudice to the appellant." *Id.*

¶ 32    A party forfeits the right to challenge a jury instruction given at trial unless it makes a timely and specific objection to the instruction and tenders an alternate instruction to the trial court. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008). "These requirements ensure that the trial court has the opportunity to correct a defective instruction and to prevent the challenging party from gaining an unfair advantage by failing to act when the trial court could remedy the faulty instruction and then obtaining a reversal on appeal." *Id.* at 557-58.

¶ 33    Here, we find that our review of this appeal is hampered by an incomplete record. An appellant, here Taylor, has the burden of presenting a sufficiently complete record of the circuit court proceedings to support his claims of error and, in the absence of such a record, this court will presume that the circuit court's order conformed with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising from an incomplete record will be resolved against the appellant. *Id.* at 92.

¶ 34    Pursuant to Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021), the record on appeal shall include the common law record, including every document filed in the case, and any report of proceedings prepared in accordance with Illinois Supreme Court Rule 323 (eff. July 1, 2017). Rule 323 provides that the report of proceedings may be a transcript prepared by court reporting personnel or, if no verbatim transcript is available, an appellant may file a bystander's report (Rule 323(c)) or an agreed statement of facts (Rule 323(d)).

¶ 35    Here, the record does not contain a report of the circuit court proceedings in any format for the pre-trial conference when the parties discussed the jury instructions, or the jury trial. The record before this court consists of only the common law documents, which alone are insufficient to allow this court to find that the circuit court abused its discretion when it determined which jury

instructions to issue. The record does not contain a copy of the jury instruction Taylor claims he tendered to the circuit court for section 5-12-150, or any other jury instruction he may have tendered regarding which party had the burden of proof. Without a report of proceedings or acceptable substitute, we have no knowledge of what occurred during the jury instruction conference on November 14, 2023. We have no knowledge of what arguments the parties made during the conference and no indication that Taylor objected to any of the instructions that were ultimately issued. Nor do we know the reasoning or rationale that provided the basis for the circuit court's rulings regarding the instructions.

¶ 36    Moreover, without a report of proceedings for the jury trial, the record does not support Taylor's statements that the evidence did not support the jury's verdict. We have no knowledge as to what testimony and other evidence the parties presented at trial or the arguments they made to the jury. Taylor refers to statements Roy Patel made on cross-examination, but we have no record of that testimony. We note that some of Crossroads' trial exhibits are included in the record, but without a report of proceedings, we have no understanding of what some of the documents are or what they represent. We have no knowledge as to what evidence and arguments Taylor presented at trial to support his theory of retaliatory eviction.

¶ 37    Based on the record before this court, we are unable to find that the circuit court abused its discretion when it determined which jury instructions would be issued. We are also unable to find that the evidence did not support the jury's verdict. Under these circumstances, this court must presume that the circuit court and the jury acted in conformity with the law, that the court ruled properly, and that the jury's verdict in favor of Crossroads was properly based on the evidence. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156-57 (2005); *Foutch*, 99 Ill. 2d at 391-92.

¶ 38    Taylor next contends that the court erred when it denied his request to sue Crossroads for punitive damages. Taylor claims Crossroads fraudulently stated that he owed $9350 in past due rent, and that his eviction was illegal. He asserts that Crossroads acted against public policy with willful and wanton conduct, and with evil intent. Taylor cites to no legal authority in support of his claim.

¶ 39    Crossroads responds that this court lacks jurisdiction to address this issue because the circuit court's order denying Taylor leave to file a counterclaim for punitive damages was not a final and appealable order. Crossroads argues that the only final order in this case was the eviction order entered on November 15, 2023, and all the other prior orders entered by the circuit court during the proceedings below cannot be challenged on appeal without a special finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 40    Subject to certain exceptions, the appellate court's jurisdiction is restricted to reviewing appeals from final orders or judgments. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9. A judgment is final if it terminates the litigation on the merits or disposes of the parties' rights as to the entire controversy or on some definite part of the litigation. *JPMorgan Chase Bank, v. East-West Logistics*, 2014 IL App (1st) 121111, ¶ 24. However, "[a]n appeal from a final judgment draws into issue all prior interlocutory orders which constituted a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken." *Id.* ¶ 25.

¶ 41    Crossroads correctly states that the circuit court's order denying Taylor leave to file a counterclaim for punitive damages was not a final and appealable order. It was an interlocutory order. However, the circuit court's ruling denying Taylor's punitive damages claim was a

procedural step in the progression of the proceedings in this case leading up to the entry of the final judgment. Therefore, upon entry of the eviction order, which was the final and appealable judgment, Taylor was allowed to challenge on appeal the circuit court's rulings in its interlocutory orders, including its denial of his motion to bring a counterclaim for punitive damages. Thus, this court has jurisdiction to consider this issue.

¶ 42      " 'The determination of whether the facts of a given case justify the imposition of punitive damages is a question of law; however, it has been uniformly held that an abuse of discretion standard will be applied on review.' " *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 142 (quoting *Stojkovich v. Monodnock Building*, 218 Ill. App. 3d 733, 742 (1996)).

¶ 43      We find that our review of this issue is again hampered by an incomplete record. On October 6, 2023, the circuit court entered a written order denying Taylor's motion for leave to file a counterclaim for punitive damages. The written order merely stated that it was entered after the court heard Taylor's oral argument on his motion. Taylor has maintained that the basis for his claim for punitive damages was Crossroads' "fraudulent" assertion that he owed $9350 in past due rent. However, the record does not contain a report of proceedings detailing what evidence and arguments Taylor presented to the court in support of his claim. Consequently, we must presume that the circuit court acted in conformity with the law and properly denied his motion. *Corral*, 217 Ill. 2d at 156-57; *Foutch*, 99 Ill. 2d at 391-92.

¶ 44      For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 45      Affirmed.